

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 1 9 2022

TAMMY H. DOWNS, CLERK
By: _Brut Pease_
DEP CLERK

**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**CHRISTA TACKER**                                             **PLAINTIFF**

**VS.**                    NO. 4:22-cv-00040-DPM

**UNUM LIFE INSURANCE COMPANY OF
AMERICA and KINDRED HEALTHCARE, LLC**          **DEFENDANTS**

**COMPLAINT**

This case assigned to District Judge Marshall
and to Magistrate Judge Harris

Plaintiff, Christa Tacker, by and through her undersigned attorneys, Lacy Law Firm, and for

her Complaint against Defendants, Unum Life Insurance Company of America and Kindred

Healthcare, states:

**JURISDICTION AND VENUE**

1.      This is an action arising under the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"), to recover benefits due under an employee

benefit plan, to redress breaches of fiduciary duties under ERISA, and to recover costs and attorneys'

fees as provided by ERISA.

2.      This is an action brought pursuant to section 502(a), (e)(1) and (f) of ERISA, 29

U.S.C. § 1132(a), (e)(1) and (f).  The Court has subject matter jurisdiction pursuant to 29 U.S.C.

1132(e)(1) and 28 U.S.C. § 1331.  Under section 502(f) of ERISA, 29 U.S.C. § 1132(f), the Court

has jurisdiction without respect to the amount in controversy or the citizenship of the parties.

3.      Venue is properly laid in this district pursuant of section 502(e)(2) of ERISA, 29

U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(b), in that one or more of the Defendants resides or is

found in this district.

## PARTIES

4.      Plaintiff Christa Tacker is an individual residing in Pulaski County, Arkansas.

5.      Defendant Unum Life Insurance Company of America ("Unum") is a foreign corporation with its principal place of business located in a state other than Arkansas. Defendant Unum served as and performed the function of the administrator of Plaintiff's claim. As claims administrator, Unum made the determination to approve or disapprove disability claims made by participants of the Plan. Unum ostensibly operated, therefore, as a "fiduciary" of the Defendant Plan within the meaning of sections 3(21) and 405(c) of ERISA, 29 U.S.C. § 1002(21) and § 1105(c). Unum's registered agent for service of process is Corporation Service Company, 300 S. Spring Street, Suite 900, Little Rock, AR, 72201.

6.      Defendant Kindred Healthcare, LLC ("Kindred Healthcare") is a foreign corporation with its principal place of business in a state other than Arkansas. Kindred Healthcare is the Plan sponsor and "named fiduciary" of the Defendant Plan, within the meaning of § 3(16)(A) & (B), § 3(21)(A), and § 405(c) of ERISA, 29 U.S.C. § 1002(16)(A) & (B), § 1002(21)(A), and § 1105(c). Kindred Healthcare is a fiduciary of the Plan within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A). Kindred Healthcare is a "party in interest" within the meaning of § 3(14) of ERISA, 29 U.S.C. § 1002(14). Kindred Healthcare's registered agent for service of legal process is CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, Kentucky 40601.

## COUNT I:  CLAIM FOR DISABILITY BENEFITS UNDER THE PLAN

7.      Paragraphs 1-6 are re-alleged and incorporated by reference as if fully set forth herein.

8.      This Action falls under 29 U.S.C. §1132 of ERISA seeking recovery of benefits by Plaintiff.

2

9.      Plaintiff is a participant in an employee benefit plan which provided disability insurance coverage.  The policy of disability insurance under which she has made a claim for benefits that was denied was renewed after March 1, 2013.

10.     As a participant, Plaintiff was entitled to short term and long term disability benefits.

11.     Plaintiff is disabled as a result of chronic pain due to thoracic and lumbar spondylosis as well as migraines and fibromyalgia.

12.     Plaintiff has made a claim for benefits owed to her as a result of her disabilities.

13.     Defendants acknowledged that Plaintiff met the definition of disability under the terms of the Plan and awarded Plaintiff benefits in the amount of $102,064.86.

14.     The benefit amount awarded to Plaintiff is insufficient to represent the balance owed under the policy.

15.     The benefit payments sum issued by Unum represented the balance of three years of benefits.  This calculation was made based upon the policy's maximum period of payment for employees with less than three years of service and less than age 67 at the time of disability as being three years of benefits.  Unum calculated Ms. Tacker's "years of service" based upon a hire date of November 10, 2014.  Thus, calculating from November 2014 until her date of disability on July 8, 2016, Unum apparently concluded that Ms. Tacker had less than three years of service at Kindred Healthcare.  This conclusion, however, is incorrect.

16.     Ms. Tacker had worked for Kindred Healthcare dating back to August of 2008.  She originally worked for Kindred from August 2008 until October 2010.  She was hired again by Kindred on June 14, 2012.  Even Unum's claim file acknowledges her hire date of June 14, 2012. *See* Exhibit 1, claim file pages 5 and 94 indicating that hire date; *see also* Exhibit 2, a document

3

from Ms. Tacker which she retained in her files dating back to 2017 which indicated a hire date of June 14, 2012.

17.    It appears that Unum used the 2014 date as the date of hire based upon a single email from Kindred Healthcare stating that Ms. Tacker "auto termed on 10/1/2012 then rehired on 11/10/2014." There is no support for this statement anywhere, there is no record to support it in the claim file, and the statement makes no sense anyway. As Ms. Tacker will testify, she worked for Kindred throughout that time, and received pay from Kindred throughout that time.   Kindred has provided false and unsupportable information about a plan participant to whom it owes a fiduciary responsibility with the result being that Tacker has been paid less than what she is legally owed in benefits.

18.    The schedule of benefits provides that, for employees with three to five years of service, and who were less than age 65 at the time of the disability, they are entitled to recover five years of benefits. For employees with five or more years of service and who are less than 60 at the time of disability, they are entitled to recover benefits through age 65.

19.    Based upon Unum's internal records documenting a date of hire with Kindred Healthcare in 2012, she had over four years of service at Kindred Healthcare and would be entitled to recover five years of benefits.

20.    Attached as Exhibit 3 are records from Kindred Healthcare proving that Tacker also worked from 2008 to 2010. This timeframe, combined with the four years of service mentioned above, gives her a total of more than five years total of service with Kindred, thus entitling Tacker to draw benefits until age 65.

4

21.     The policy at issue contains a rehire provision stating that, "if you are rehired more than six months after your employment with Kindred, you will be treated as a new employee and you will need to satisfy the waiting period before you become eligible." This provision, however, applies, by its own terms, to the eligibility requirement of the plan. It is not referenced in the service requirement or mentioned anywhere else as a precondition for calculation of service time with the plan sponsor.

22.     Ms. Tacker has more than five years of service with Kindred Healthcare. Thus, she is entitled to recover benefits until the age of 65. Any interpretation to the contrary is arbitrary and capricious. Moreover, given that this plan was replaced in January 2016, a deferential standard of review would not be afforded to Unum, and Ms. Tacker would be entitled to a *de novo* review of her claim.

23.     The amount of harm to Plaintiff is continuing at this time and is in excess of Federal Diversity Jurisdiction.

24.     Pursuant to 29 U.S.C. § 1001 et seq., Plaintiff is entitled to recover all benefits due and owed under the Plan, past and future, all consequential and incidental damages incurred in result of the wrongful denial and termination of benefits thereunder, and all attorneys fees and costs herein expended.

## COUNT II: EQUITABLE RELIEF

25.     Paragraphs 1-24 are re-alleged and incorporated by reference as if fully set forth herein.

26.     Kindred Healthcare is the Plan sponsor and "named fiduciary" of the Defendant Plan, within the meaning of § 3(16)(A) & (B), § 3(21)(A), and § 405(c) of ERISA, 29 U.S.C. §

5

1002(16)(A) & (B), § 1002(21)(A), and § 1105(c).  Kindred Healthcare is a fiduciary of the Plan within the meaning of § 3(21)(A) of ERISA, 29 U.S.C. § 1002(21)(A).

27.    29 U.S.C. § 1132(a)(3) also permits the Plaintiff pursue equitable relief to enforce ERISA's provisions or the terms of the Plan.  This statutory provision encompasses claims for breach of fiduciary duty, waiver, and estoppel.

28.    Plaintiff is entitled to recover against Defendants for breach of fiduciary duty, waiver, and estoppel, pursuant to 29 U.S.C. § 1132(a)(3) for their actions in this case.  Specifically, Defendants approved Plaintiff's claim for disability benefits only to pay her less that what she is owed under the plan.  Defendants have failed to conduct a full and fair review, have ignored relevant medical information, have provided and considered false and inaccurate information about the dates of Tacker's employment, and have failed to obtain or consider other medical information that would support Plaintiff's claim.

29.    Pursuant to 29 U.S.C. § 1001, et seq., Plaintiff is entitled to recover all benefits due and owed under the Plan as a result of the Defendant's breach of fiduciary duty and under the equitable principles of waiver and estoppel encompassed in the ERISA statutory provision.

### COUNT III:  ATTORNEY'S FEES

30.    Paragraphs 1-29 are re-alleged and incorporated by reference as if fully set forth herein.

31.    Plaintiff is entitled to recover a reasonable attorney's fee and costs of the action herein, pursuant to section 502(g)(1) of ERISA, 29 U.S.C. § 1132(g).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that the Court:

(1)     Award Plaintiff all past and future disability benefits to which she is entitled and

interest as it has accrued since date of original entitlement;

(2)     Award Plaintiff the costs of this action and reasonable attorneys' fees; and

(3)     Award such other, further and different relief as may be just and proper.

Respectfully Submitted,

Brandon W. Lacy
**LACY LAW FIRM**
630 S. Main Street
Jonesboro, AR 72401
870-932-4522
brandon@lacylawfirm.com

_____
Brandon W. Lacy #03098

```
                        Claim Profile - Eligibility
--------------------------------------------------------------------------------
Policy No.: 931346

Policy Name: KINDRED HEALTHCARE OPERATING INC - REHABCARE

Division: 0113

Group Rate ID (RBCN):        Individual Agreement ID:

Billing Control No. (BCN):

Class/PEG: 004      Choice: 2

Contract Type: CXC

Pay Group:       Report Group:       Report Location:

Last Day Worked: 07/06/2016      Disability Date: 07/06/2016

As Of Date: 07/06/2016

Hire Date: 06/14/2012      Work Status(ER Form):

Hours Worked(ER Form): 40.00

Insured Effective Date: 01/01/2016      Insured Termination Date: 07/09/2016

Insured Reinstatement Date:

Benefit Begin Date: 10/04/2016      Future Date Indicator: No

Certified Thru Date:

Earnings/Salary: 7665.08      Earnings Mode: Monthly

Auto Complete Responses:

Tax Withholding:      Benefit Amount: 4599.06

Residence State at Time of Loss: Arkansas

EE Contribution %:      Pre/Post Tax:

MVA: No      Work Related: No      Third Party:

Expected Delivery Date:      Actual Delivery Date:

Delivery Type:

1st Treatment Date: 07/11/2016

Surgery Date:      Surgery Type:

1st Hospital Date:

1st Hospital End Date:

Youngest Dependent Birth Date: 09/02/1992

Prior Coverage:      Prior Carrier:
```

EXHIBIT

1

*Claimant Name: Christa Tacker      Claim #:  16910852*

**Tacker_LTD Claim File 0005**

Employee: TACKER, CHRISTA
Birth Date: 5/31/1972
Tax ID: 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
Employee ID Type: Employee ID
Employee ID: 00823795
Employer Name: Kindred Healthcare Operating, Inc.
Gender: Female
Marital Status: Unknown
Occ Title: Occupational Therapist
Original Hire Date: 6/14/2012
Hire Date: 11/10/2014
Insured Termination Date:
RTW Limitations Permitted: Yes
Hours Worked in Last 12 Months: 1393.00
Office: 3655/Non-Union
Last Earn Change: 11/1/2015
Employment Status: Active Employee
Record Loaded: 7/15/2016 1:07:16 PM

Address ------------------------------------------------------------
Primary Residence: 1010 east lee street , sherwood, AR 72120, US

Business Physical: AR , US

Access -------------------------------------------------------------
Home Email: SHELLY.PEEK@KINDREDHEALTHCARE.COM

Home Telephone: 5018384771

Supervisor Office Email: BENEFITS.REHAB@KINDREDHEALTHCARE.COM

Supervisor Work Phone: 5025966431

Coverages ----------------------------------------------------------
Product: Long Term Disability
Product Type: Flex
Funding: Fully Insured
State Plan: No
Policy No.: 00931346
Division: 0113
PEG: 004
Choice: 2
Eff Date: 1/1/2016
Term Date:
Plan Earnings: 7665.08
Earnings Type: Hourly
Earnings Mode: Monthly
After Tax: 99.999
Report Group: 40113

Product: Short Term Disability
Product Type: ASO
Funding: Self Insured
State Plan: No
Policy No.: 00931343
Division: 0113
PEG: 002
Choice: 1
Eff Date: 1/1/2016
Term Date:
Plan Earnings: 1768.87
Earnings Type: Hourly
Earnings Mode: Weekly

**Print to PDF**

## Employee Detail Report

Printed on 08/2/2017

## Kindred Healthcare, Inc

### Personal Information

christa leanne tacker                                   1010 east lee street, sherwood, AR 72120

| SSN | Date of Birth | Effective date | Gender | Phone |
|---|---|---|---|---|
| | | 10/18/2015 | Female | 5018384771 |

| Email | Earnings amount | Earnings amount effective date | Date of hire | Termination Date |
|---|---|---|---|---|
| newyorkmiddle@yahoo.com | $91,981.00 per year | 11/01/2015 | 06/14/2012 | 07/08/2016 |

**Employee Status:** 1
**FLSA Status:** N
**Leave:** NOLOA
**Union Code:** N
**HCE Indicator:** N

**Wellness Compliance:** Y
**Service Area:** AR
**Benefit Groups:** R001
**Acquisition Type:** NA
**Acquisition Indicator:** NA

**Division:** KRS
**OTR Eligible:** N
**Facility Number:** 3655
**Pay Area:** VM
**Adjusted Service Date:** On or after 5/1/1997



EXHIBIT
2

unless medical underwriting is required.

### Voluntary Long Term Disability

You requested voluntary long term disability coverage.

**Benefit Option Selection**

You have selected the 66 2/3% benefit option.

The deduction will appear on your paycheck starting the second paycheck in January
unless medical underwriting is required.

### Flexible Health Care Spending Account

You waived participation in a flexible health care spending account.

### Flexible Dependent Care Spending Account

You waived participation in a flexible dependent care spending account.

*I certify that all of the information on this form is true and complete to the best of my knowledge and belief. I understand that my elections may not be changed during the plan year unless I have a qualifying life status change. I hereby authorize RehabCare Group to reduce my pay by the amount required to pay for the choices I have made, if any, for this and future plan years. I understand that my coverage is subject to all the terms of the plan of insurance contained in the group policy and summarized in the materials provided to me. I understand that the company retains the right to amend, modify or terminate the benefit plans at any time. I also understand that I am responsible for notifying RehabCare Group of any change in my status within 30 days of the change. Failure to do so may disqualify me from receiving coverage.*

The above terms were agreed to and submitted on Wednesday, November 04, 2009at 1:17 PM CST.

Print

**Please click here to close this window.**

*Please Note: I did a buy up from 60% standard of LTD for 80% of Income of Income 92 thousand Anual Income*

Wednesday, November 04, 2009
1:17 PM

*Buy up LTD = 80% of Income*



# PERSONNEL ACTION REQUEST (PAR)

## SECTION 1 — Required for all actions

| Effective Date: 7-10-16 | Facility name/number: ARKANSAS CONVALESCENT CENTER 2111 | | Worksite/State: AR |
|---|---|---|---|
| Employee Name:<br>CHRISTA LEANNE TACKER | | SAP Personnel Number:<br>823796 | Social Security Number: |
| Date form completed:<br>7-17-16 | Phone number of individual completing form: 501-258-7568 | Form completed by:<br>PHILLIP BASS PT | |

Action: (Check all that apply and complete corresponding sections.)

| | | | |
|---|---|---|---|
| ☐ New Hire | ☐ Status Change* | ☐ Leave of Absence (LOA) | ☐ Bonus |
| ☐ Job/Position Change* | ☐ Transfer/Promotion* | XX☐ Separation | ☐ Rehire |
| ☐ Wage/Salary Adjustment* | ☐ Personal Change* | ☐ Reporting Relationship Change* | |

*Actions must be made effective at the beginning of a pay period.

## SECTION 2

### Section 2-A — New Hire / Rehire*

*If rehiring from another Kindred facility, also submit a Transfer/Rehire Form

| Start Date: | Status:<br>☐ FT ☐ PT ☐ PD | Sched Hrs/Wk: | SAP Position Number: | Prem Code/Pay Rule: |
|---|---|---|---|---|
| Job Title: | | Gender:<br>☐ M ☐ F | Date of birth: | EE/Hours Being Replaced |
| Reports To: | | Department name/number: | | |
| Pay Rate:<br>$ | Per: ☐<br>Hr ☐ Yr | New Hire Bonus: (If yes, attach Bonus Agreement)<br>☐ Y ☐ N | | |
| Street Address: | | | | |
| City: | | State: | Zip: | Phone number: |

### Section 2-B

Job Change / Status Change / Promotion / **Financial Responsibility Change (RHB only)** / Reporting Relationship Change / Transfer*

* Also submit a Transfer/Rehire Form

| Current | | | New | | |
|---|---|---|---|---|---|
| Job title: | | | Job title: | | |
| SAP position number: | Classification:<br>☐ Exempt ☐ Non-Exempt | | SAP position number: | Classification:<br>☐ Exempt ☐ Non-Exempt | |
| Facility name/number: | | | Facility name/number: | | |
| Facility Name/SAP# to Add Financial Responsibilty: | | | Facility Name/SAP # to Remove Financial Responsibility: | | |
| **Results of Leveling Review:** | | | ☐ PDI ☐ PDII ☐ PDIII | | |
| Department name/number: | | | Department name/number: | | |
| Reports to: | | | Reports to: | | |
| Pay Rate:<br>$ | | Per: ☐ Hr ☐ Yr | Pay Rate:<br>$ | | Per: ☐ Hr ☐ Yr |
| Status:<br>☐ FT ☐ PT ☐ Per diem | | Scheduled hrs/week: | Status:<br>☐ FT ☐ PT ☐ Per diem | | Scheduled hrs/week: |
| Reason for change/rate adjustment: | | | | | |

### Section 2-C — Wage/Salary Adjustment

Pay Action Type: (Select only one)

| | | | |
|---|---|---|---|
| ☐ Merit | ☐ Market Adjustment | ☐ Union Contract | ☐ Increase to Min of Range |
| ☐ Demotion | ☐ Promotion | ☐ Performance Decrease | ☐ Cost of Living Adjustment |

EXHIBIT 3

...ctive Date: Mar 04
...ev Date: Jun 2011

**Kindred** Healthcare

# PERSONNEL ACTION REQUEST (PAR)

| Bonus | ☐ Lateral Job Change | ☐ Reclassification | ☐ Status Change | ☐ Change in Scheduled Hrs |
|---|---|---|---|---|
| | ☐ Increase to Min Wage | ☐ Annual | ☐ Reorganization | ☐ Completed Orientation |

**No pay action will be processed without proper authorization signatures**

| Current pay rate: $    Per: ☐ Hr ☐ Yr | New pay rate: $    Per: ☐ Hr ☐ Yr | Change %: |
|---|---|---|
| Bonus amount $ | Attach bonus agreement | Bonus Earned Period Start:    End: |

---

## Section 2-D

**Personal Changes**

Type of Change: (Check all that apply)

☐ Name Change    ☐ Address Change    ☐ Phone Change    ☐ Emergency Contact

New Name: (Employee must provide documentation of change from the Social Security Office.)

Street Address:

| City: | State: | Zip: | Phone number: |
|---|---|---|---|
| Emergency Contact Name: | Relationship: | | Phone number: |

Employee signature: (For personal changes only)    Date Signed:

---

## Section 2-F

**Separation**

Last day worked: 7-8-16    If address will change, complete **Section 2-D** above.

Reason for separation*: (Select only one)

| ☐ Resignation  Involuntary | ☐ Attendance/Punctuality | ☐ Failed Return from LOA |
|---|---|---|
| ☐ Resignation  with Notice | ☐ Standards of Conduct Violation | ☐ Job Abandonment/No call No show |
| ☐ Resignation  without Notice | xx☐ Unsatisfactory Performance | ☐ Return to School |
| ☐ Facility Sold/Closed | ☐ Failed Hiring Process | ☐ Contract Ended |
| ☐ Position Elimination/Layoff | ☐ No Licensure/Certification | ☐ Retirement |
| ☐ Reduction in Force  Group | ☐ PRN-Minimum Hrs Worked Not Met | ☐ Death |

*Manager must complete the Separation Checklist form.  If appropriate, schedule an exit interview.

Bonus/Relocation Payback Required?    ☐ Y  ☐xx N    If yes, attach agreement.

---

## Section 2-G

**Comments**

---

## Section 3

**New Hire Source**

| ☐ Employee Referral | ☐ Internet  Monster | ☐ Internet  Pharmacy Website | ☐ Internet  Other | ☐ Convention/ Conference | ☐ Walk In |
|---|---|---|---|---|---|
| ☐ Non Employee Referral | ☐ Internet  America's Job Bank | ☐ Internet  Rehab Therapy | ☐ KNECT (Kindred Internal Intranet | ☐ New Business/ Acquisition | ☐ Job Fair |
| ☐ State Job Services | ☐ Internet  Career Builder | ☐ Internet  Nursing | ☐ Ad  Newspaper | ☐ Employment Agency/ Search Firm | ☐ Other |
| ☐ Other Gov't Agency | ☐ Internet  Diversity | ☐ Internet  Kindred Website | ☐ Ad  Journal/ Magazine | ☐ Kindred Recruiter | |

---

## SECTION 4 — Required for all actions EXCEPT Section 2-D Personal Changes

**Approval Signatures**

| First Line Approval/Title (Type):    Date: 7-18-16 PT/PD | Next Level Approval/Title (Type):    Date: |
|---|---|
| Signature PHILLIP BASS PT/PD | Signature |

**Corporate Only: (Required for Wage/Salary Adjustments only)**

| Executive Committee Member:    Date: | CEO/COO Approval:    Date: |
|---|---|

Effective Date: Mar 04
Rev Date: Jun 2011

*RE-APPLY*

SOP Section 9.14.a

# PROFESSIONAL CHOICE ACCOUNT REIMBURSEMENT REQUEST FORM

Name: *LEANNE TUCKER*

SS# or Personnel # ████████████

Work Location: _____
*Unit number and name – primary work location only*

This form and applicable receipts/certificates may be submitted via fax to **1.866.736.5087**.

The deadline for submitting request for reimbursement is 30 days after the end of the month in which the costs were incurred. For questions, please contact the PCA Help Desk at 1-877-999-7751.

Division: _____

Discipline:   *Check One*   ☐ PT   ☐ PTA   ☒ OT   ☐ COTA    ☐ SLP   ☐ RN   ☐ SW   ☐ Other (Indicate): _____

Employment Status:    *Check One*   ☒ Full Time (≥30 hours)       ☐ Part Time (≥24 hours)

Course/Seminar Date or Renewal Period **(Required field)** _____

| Category | Checklist | Amount Requested |
|---|---|---|
| Continuing Education Seminar (on site) | ☐ Attach receipt for payment (and certificate of completion if obtained/or within 60 days) | $ |
| On Line Continuing Education Course | ☐ Attach receipt for payment and certificate of completion | $ |
| Home Study Course | ☐ Attach receipt for payment and certificate of completion | $ |
| State Licensure Fee - _____ State | ☐ Attach copy of receipt for payment and renewal invoice | $ |
| Professional Association Dues | ☐ Attach membership card, receipt for payment and renewal invoice    Name of Professional Association: | $ |
| Sub – Group Professional Dues | ☐ Attach membership card, receipt for payment and renewal invoice | $ |
| Professional Journal/Textbooks required for CEU | ☐ Attach itemized receipt for textbook required for course    Title of Professional Journal: | $ |
| Clothing | ☒ Attach receipt for payment | $ 111.60 |
| Bluetooth Keyboard | ☐ Attach receipt for payment | $ |

Total Funds Available for use _____  - Funds Used per this report_____  = Remaining Funds_____

By signing below, I agree to return any funds reimbursed by the company to me for a course or license if I do not meet the documentation requirements for PCA Reimbursement within 60 days after completion of the event. Furthermore, I acknowledge that I will be eligible for the PCA benefit on the above dates according to Kindred's policies and guidelines for such benefit, and agree that the above costs were incurred in order to help maintain my current professional designation. I understand that reimbursement will be received 1 to 3 pay periods after receipt of this form by PCA, provided the form and supporting documentation are complete.

**Required**
Employee Signature: X_*Leanne Tucker OTR*_____   Date: *4/5/16*

Employee Email Address: *Chasta.Tucker @ Rehabcare.com*

Area Director Operations Signature: _*Phillip Senn PT*_____   Date: _____

© Kindred Group, Inc.

Rev 3.12.14

May  03  2016  11:17AM  HP  Fax/Acc  Rehab  18705363193

page 1

```
04/05/2016              Ref No. 21568-1
10:15AM                 Station 1

                    Scrub Loft
                 7511 Warden Road
                 Sherwood, AR 72120
                   (501)833-0644

Transaction   Sale
Clerk         Barbara

Sold To            Acct No. 3999-1

Christa Tacker
(501)838-4771

Qty          Item              Amount
------------------------------------------
1       00302755    22.40 m      22.40
        WAL-5310-ECLIP-L * SCRUB PANT
1       00302769    21.00 m      21.00
        WAL-5450-ECLIP-L * TOP
1       00277997    26.40 m      26.40
        LAN-S201003-BKPN-M * PANT
1       00356735    26.40 m      26.40
        BCO-2115-01-M * TOP
1       00301015    31.20 m      31.20
        BCO-2208-01-M * BOTTOMS
1       00277786    24.80 m      24.80
        LAN-S101002-BKPN-M * TOP
1       00370855    25.60 m      25.60
        BCO-41423-01-M * TOP
1       00371305    28.40 m      28.40
        BCO-4276-01-M * BOTTOMS
1       00383193    24.80 m      24.80
        LAN-6003-BKPN-M * TOP
1       00383292    26.40 m      26.40
        LAN-6503-BKPN-M * PANT
------------------------------------------
             Sub Total          257.40
             Tax  8.00%          20.59
             Total              277.99
Cash         Tendered           280.00
             Change               2.01

             You Saved           72.10
```

REFUNDS are only given within 14 days
of purchase after 14 days only store
credit and exchanges will be allowed.
You must have the receipt and all
garments must have original tags
attached. ALL CLEARANCE SALES ARE FINAL!
WE APPRECIATE YOUR BUSINESS!

SOP Section 9.14.a

# PROFESSIONAL CHOICE ACCOUNT REIMBURSEMENT REQUEST FORM

Name: _LEANNE TACKER_

SS# or Personnel #: ▉▉▉▉▉▉▉▉

Work Location: _____
_Unit number and name – primary work location only_

Division: _____

| This form and applicable receipts/certificates may be submitted via fax to **1.866.730.6087.** |
|---|
| The deadline for submitting request for reimbursement is 30 days after the end of the month in which the costs were incurred. For questions, please contact the PCA Help Desk at 1-877-999-7751. |

Discipline:  *Check One*  ☐ PT  ☐ PTA  ☒ OT  ☐ COTA    ☐ SLP  ☐ RN  ☐ SW  ☐ Other (Indicate): _____

Employment Status:  *Check One*  ☒ Full Time (≥30 hours)    ☐ Part Time (≥24 hours)

Course/Seminar Date or Renewal Period **(Required field)** _____

| Category | Checklist | | Amount Requested |
|---|---|---|---|
| Continuing Education Seminar (on site) | ☐ Attach receipt for payment (and certificate of completion if obtained/or within 60 days) | | $ |
| On Line Continuing Education Course | ☐ Attach receipt for payment and certificate of completion | | $ |
| Home Study Course | ☐ Attach receipt for payment and certificate of completion | | $ |
| State Licensure Fee - _____ State | ☐ Attach copy of receipt for payment and renewal invoice | | $ |
| Professional Association Dues | ☐ Attach membership card, receipt for payment and renewal invoice  Name of Professional Association: | | $ |
| Sub – Group Professional Dues | ☐ Attach membership card, receipt for payment and renewal invoice | | $ |
| Professional Journal/Textbooks required for CEU | ☐ Attach itemized receipt for textbook required for course  Title of Professional Journal: | | $ |
| Clothing | ☒ Attach receipt for payment | | $ 111.60 |
| Bluetooth Keyboard | ☐ Attach receipt for payment | | $ |

Total Funds Available for use_____ - Funds Used per this report_____ = Remaining Funds_____

By signing below, I agree to return any funds reimbursed by the company to me for a course or license if I do not meet the documentation requirements for PCA Reimbursement within 60 days after completion of the event. Furthermore, I acknowledge that I will be eligible for the PCA benefit on the above dates according to Kindred's policies and guidelines for such benefit, and agree that the above costs were incurred in order to help maintain my current professional designation. I understand that reimbursement will be received 1 to 3 pay periods after receipt of this form by PCA, provided the form and supporting documentation are complete.

**Required**
Employee Signature: X _LeAnn Tack OTR_     Date: _4/5/16_

Employee Email Address: _Christi.Tacker@Rehabcare.com_

Area Director Operations Signature: _____     Date: _____

© Kindred Group, Inc.     Rev 3.12.14

Apr  05  2016  11:19AM  HP  FaxAcc  Rehab  18705363193     page 1

```
04/05/2016          Ref No. 21568-1
10:15AM             Station 1

                 Scrub Loft
               7511 Warden Road
               Sherwood, AR 72120
                 (501)833-0644

Transaction    Sale
Clerk          Barbara

Sold To              Acct No. 3999-1

Christa Tacker
(501)838-4771

Qty          Item           Amount
............................ ..........
1      00302755    22.40 m       22.40
       WAL-5310-ECLIP-L * SCRUB PANT
1      00302769    21.00 m       21.00
       WAL-5450-ECLIP-L * TOP
1      00277997    26.40 m       26.40
       LAN-S201003-BKPN-M * PANT
1      00356735    26.40 m       26.40
       BCO-2115-01-M * TOP
1      00301015    31.20 m       31.20
       BCO-2208-01-M * BOTTOMS
1      00277786    24.80 m       24.80
       LAN-S101002-BKPN-M * TOP
1      00370855    25.60 m       25.60
       BCO-41423-01-M * TOP
1      00371305    28.40 m       28.40
       BCO-4276-01-M * BOTTOMS
1      00383193    24.80 m       24.80
       LAN-5003-BKPN-M * TOP
1      00383292    26.40 m       26.40
       LAN-6503-BKPN-M * PANT
............................ ..........
             Sub Total         257.40
             Tax  8.00%         20.59
             Total            277.99
Cash         Tendered         280.00
             Change             2.01

             You Saved          72.10

       REFUNDS are only given within 14 days
       of purchase after 14 days only store
       credit and exchanges will be allowed.
       You must have the receipt and  all
       garments must have original tags
      attached. ALL CLEARANCE SALES ARE FINAL!
             WE APPRECIATE YOUR BUSINESS!
```

**Kindred**

PERSONNEL ACTION REQUEST (PAR)

## Section 1 - Required for all actions

| Effective Date: | Facility name/number: | | Worksite/State: |
|---|---|---|---|
| 11/10/14, 8:00 AM | 634A - Arkansas Convalescent Ctr - 2111 | | Arkansas Convalescent Ctr - 2111 |

| Employee Name: | | SAP Personnel Number: | Social Security Number: |
|---|---|---|---|
| christa leanne tacker | | 823796 | |

| Date form completed: | Phone Number of Individual Completing form: (with Area Code) | Form Completed By: |
|---|---|---|
| | 7695 | Stewart |

**Action:** (Check all that apply and complete corresponding sections.)

☐ New Hire  ☑ Rehire  ☐ Personal Change*  ☐ Status Change*  ☐ Separation  ☐ Bonus  ☐ Transfer/Promotion*  ☐ Job/Position Change*  ☐ Wage/Salary Adjustment*  ☐ Reporting Relationship Change*

*Actions must be made effective at the beginning of a pay period
RHB Division for status changes: consult HRAs for an accurate effective date

## Section 2

### Section 2-A

| Start Date | Status: | Sched Hrs/Wk: |
|---|---|---|
| 11/10/14, 8:00 AM | ☑ FT  ☐ PT  ☐ Per Diem | 40 |

**New Hire**

| SAP Job Code: | SAP Position Number: | Job Title: |
|---|---|---|
| | | Arkansas Convalescent Center - Full Time Occupatio |

**New Hire**

| Prem Code/Pay Rule: | Routine Visit/Points Rate: | Pay Rate: | Per | New Hire Bonus: | (if yes, attach Bonus Agreement) |
|---|---|---|---|---|---|
| | | 44.00 | ☐ Hr  ☐ Yr | ☐ Y  ☐ N | |

**Rehire***
*If rehiring from another Kindred facility, also submit a Transfer/Rehire Form

| Reports to: | Department Name/Number: | EE/Hours Being Replaced: |
|---|---|---|
| Phillip D Bass | | 40 |

| Street Address: | Gender: | Date of Birth: |
|---|---|---|
| 1010 east lee street | ☐ M  ☑ F | 5/31/72 |

| City: | State: | Zip: | Phone Number: (with Area Code) |
|---|---|---|---|
| sherwood | Arkansas | 72120 | 5018384771 |

### Section 2-B

**Job Change
Promotion
Status Change**

| Current | | | New | | |
|---|---|---|---|---|---|
| Job Title: | | Classification: ☐ Exempt  ☐ Non-Exempt | Job Title: | | Classification: ☐ Exempt  ☐ Non-Exempt |

**Financial Responsibility Change (RHB only)**

| SAP# to Remove Financial Responsibility: | | SAP# to Add Financial Responsibility: | |
|---|---|---|---|

| SAP Position Number | Facility Name/Number: | SAP Position Number | Facility Name/Number: |
|---|---|---|---|
| | | | |

**Results of Leveling Review:** ☐ PDI  ☐ PDII  ☐ PDIII

**Reporting Relationship Change**

| Department Name/Number: | Reports to: | Department Name/Number: | Reports to: |
|---|---|---|---|
| | | | |

| Pay Rate: | Per ☐ Hr ☐ Yr | Routine Visit/Points Rate: | Pay Rate: | Per ☐ Hr ☐ Yr | Routine Visit/Points Rate: |
|---|---|---|---|---|---|

**Transfer***
*Also submit a Transfer/Rehire Form

| Status: ☐ FT ☐ PT ☐ PD | Scheduled hrs/week: | Status: ☐ FT ☐ PT ☐ PD | Scheduled hrs/week: |
|---|---|---|---|

| Reason for change/rate adjustment |
|---|

### Section 2-C

**Wage/Salary Adjustment**

| Pay Action Type: (Select only one) | | | | |
|---|---|---|---|---|
| ☐ Merit | ☐ Market Adjustment | ☐ Performance Decrease | ☐ Status Change | ☐ Change in Scheduled Hrs  ☐ Annual |
| ☐ Promotion | ☐ Reclassification | ☐ Completed Orientation | ☐ Union Contract | ☐ Increase to Min of Range |
| ☐ Demotion | ☐ Lateral Job Change | ☐ Increase to Min Wage | ☐ Reorganization | ☐ Cost of Living Adjustment |

*No pay action will be processed without proper authorization signatures*

| Current Pay Rate: | Per ☐ Hr ☐ Yr | New pay rate: | Per ☐ Hr ☐ Yr | Change % |
|---|---|---|---|---|

**Bonus**

| Bonus Amount $ (Attach Agreement) | Bonus Wage Type: | Bonus Earned Period Start: | End: |
|---|---|---|---|

**Approval Signatures**

| First Line Approval/Title (Type): | Date: | Next Level Approval Signature: (EC if Support Center) | Date: |
|---|---|---|---|

**Kindred** Healthcare

PERSONNEL ACTION REQUEST (PAR)

| Section 2-D | Type of Change: (Check all that apply) | New Name: (Employee must provide documentation of change from the Social Security Office.) | | | |
|---|---|---|---|---|---|
| **Personal Changes** | ☐ Name Change<br>☐ Phone Change<br>☐ Emergency Contact<br>☐ Address Change | Street Address: | | | Phone Number: (with Area Code) |
| | | City | | State: | Zip Code: |
| | Emergency Contact Name: | | Relationship: | | Phone Number: (with Area Code) |
| | Employee Signature:   (For Personal Changes Only) | | | | Date Signed: |

| Section 2-F | Last Day Worked: | | If address will change, complete Section 2 - D above. | |
|---|---|---|---|---|
| **Separation** | Reason for Separation*:     (Select only one) | | | |
| | ☐ Resignation - Involuntary<br>☐ Resignation - with notice<br>☐ Resignation - without Notice<br>☐ Position Elimination/Layoff<br>☐ Reduction in Force - Group | ☐ Attendance/Punctuality<br>☐ Standards of Conduct Violation<br>☐ Unsatisfactory Performance<br>☐ No Licensure/Certification<br>☐ PRN-Minimum Hrs Worked Not Met | ☐ Facility Sold/Closed<br>☐ Failed Hiring Process<br>☐ Job Abandonment (call/show)<br>☐ Failed Return from LOA<br>☐ Return to School | ☐ Contract Ended<br>☐ Retirement<br>☐ Death |
| | *Manager must complete the Separation Checklist form.  If appropriate, schedule an exit interview | | | |
| | Bonus/Relocation Payback Required? | | | |
| | ☐ Y   ☐ N   If yes, attach agreement. | | | |

| Section 2-G | Comments: |
|---|---|
| **Comments** | |

Note: SMART System access needed for additional facility numbers (i.e. OP100, SRS 105).

(If SMART access is needed for any facilities other than the home facility the IS Help Desk must be notified).

| Section 3 | | | | |
|---|---|---|---|---|
| **New Hire Source** | ☐ Employee Referral<br>☐ Non-Employee Referral<br>☐ State Job Services<br>☐ Other Gov't Agency<br>☐ Kindred Recruiter<br>☐ Job Fair | ☐ Internet - Monster<br>☐ Internet - Career Builder<br>☐ Internet - Diversity<br>☐ Internet - Rehab Therapy<br>☐ Internet - Nursing<br>☐ Internet - Other | ☐ Internet - Pharmacy Website<br>☐ Internet - America's Job Bank<br>☐ Internet - Kindred Website<br>☐ KNECT (Kindred Internal Intranet)<br>☐ New Business/Acquistion<br>☐ Employment Agency/Search Firm | ☐ Ad - Newspaper<br>☐ Ad - Journal/Magazine<br>☐ Convention/Conference<br>☐ Walk-in<br>☐ Other |

| Section 4 - Required for all actions EXCEPT 2-D Personal Changes | | | | | |
|---|---|---|---|---|---|
| **Approval Signatures** | First Line Approval/Title (Type): | Date: | Next Level Approval/Title (Type): | | Date: |
| | Signature: | | Signature: | | |
| | Support Center Only: (Required for Wage/Salary Adjustments Only) | | | | |
| | Executive Committee Member Name: | Date: | CEO/CO Approval: | | Date: |
| | Signature: | | Signature: | | |

| Employee Name: | |
|---|---|
| christa leanne tacker | 0 |



## CONSUMER DISCLOSURE AND AUTHORIZATION FORM

### Disclosure Regarding Background Investigation

Kindred Healthcare (the "Company") may request, for lawful employment purposes, background information about you from a consumer reporting agency in connection with your employment or application for employment (including independent contractor assignments, as applicable). This background information may be obtained in the form of consumer reports and/or investigative consumer reports (commonly known as "background reports"). These background reports may be obtained at any time after receipt of your authorization and, if you are hired or engaged by the Company, throughout your employment or your contract period.

A consumer reporting agency, Kroll Background America, Inc. ("Kroll"), Hireright, Inc. ("HireRight"), or another consumer reporting agency, will prepare or assemble the background reports for the Company. KBA is located and can be contacted by mail at 100 Centerview Drive, Suite 300, Nashville, TN 37214, and KBA can be contacted by phone at (800) 400-2761. Information about KBA's privacy practices is available at www.krollbackgroundscreening.com/legal/privacy/. HireRight is located and can be contacted by mail at 5151 California, Irvine, CA 92617, and HireRight can be contacted by phone at (800) 400-2761. Information about HireRight's privacy practices is available at www.hireright.com/Privacy-Policy.aspx.

The background report may contain information concerning your character, general reputation, personal characteristics, mode of living, and credit standing. The types of information that may be obtained include, but are not limited to: social security number verifications; address history; credit reports and history; criminal records and history; public court records; driving records; accident history; worker's compensation claims; bankruptcy filings; educational history verifications (e.g., dates of attendance, degrees obtained); employment history verifications (e.g., dates of employment, salary information, reasons for termination, etc.); personal and professional references checks; professional licensing and certification checks; drug/alcohol testing results, and drug/alcohol history in violation of law and/or company policy; and other information bearing on your character, general reputation, personal characteristics, mode of living and credit standing.

This information may be obtained from private and public record sources, including, as appropriate: government agencies and courthouses; educational institutions; former employers; personal interviews with sources such as neighbors, friends and associates; and other information sources. If the Company should obtain information bearing on your credit worthiness, credit standing or credit capacity for reasons other than as required by law, then the Company will use such credit information to evaluate whether you would present an unacceptable risk of theft or other dishonest behavior in the job for which you are being evaluated.

You may request more information about the nature and scope of any investigative consumer reports by contacting the Company. A summary of your rights under the Fair Credit Reporting Act is also being provided to you.

## ADDITIONAL STATE LAW NOTICES

If you are a California, Maine, Massachusetts, New York or Washington State applicant, employee or contractor, please also note:

**CALIFORNIA:** Pursuant to section 1786.22 of the California Civil Code, you may view the file maintained on you by Kroll during normal business hours. You may also obtain a copy of this file, upon submitting proper identification and paying the costs of duplication services, by appearing at Kroll's offices in person, during normal business hours and on reasonable notice, or by certified mail. You may also receive a summary of the file by telephone, upon submitting proper identification and written request. Kroll has trained personnel available to explain your file to you, including any coded information, and will provide a written explanation of any coded information contained in your file. If you appear in person, you may be accompanied by one other person, provided that person furnishes proper identification. "Proper identification" includes documents such as a valid driver's license, social security account number, military identification card, and credit cards. If you cannot identify yourself with such information, Kroll may require additional information concerning your employment and personal or family history to verify your identity.

**MAINE:** You have the right, upon request, to be informed of whether an investigative consumer report was requested, and if one was requested, the name and address of the consumer reporting agency furnishing the report. You may request and receive from the Company, within five business days of our receipt of your request, the name, address and telephone number of the nearest unit designated to handle inquiries for the consumer reporting agency issuing an investigative consumer report concerning you. You also have the right, under Maine law, to request and promptly receive from all such agencies copies of any such reports.

**MASSACHUSETTS:** If we request an investigative consumer report, you have the right, upon written request, to a copy of the report.

**NEW YORK:** You have the right, upon written request, to be informed of whether or not an investigative consumer report was requested. If an investigative consumer report is requested, you will be provided with the name and address of the consumer reporting agency furnishing the report. You may inspect and receive a copy of the report by contacting that agency. Attached below is additional information about New York law.

**WASHINGTON STATE:** If the Company requests an investigative consumer report, you have the right, upon written request made within a reasonable period of time after your receipt of this disclosure, to receive from the Company a complete and accurate disclosure of the nature and scope of the investigation requested by the Company. You also have the right to request from the consumer reporting agency a written summary of your rights and remedies under the Washington Fair Credit Reporting Act.

## Authorization of Background Investigation

I have carefully read and understand the Disclosure Regarding Background Investigation on pages 1-2 of this form and the attached summary of rights under the Fair Credit Reporting Act. By my signature below, I consent to preparation of background reports by a consumer reporting agency such as Kroll Background America, Inc., and to the release of such background reports to the Company and its designated representatives and agents, for the purpose of assisting Kindred Healthcare (the "Company") in making a determination as to my eligibility for employment (including independent contractor assignments, as applicable), promotion, retention or for other lawful employment purposes. I understand that if the Company hires me or contracts for my services, my consent will apply, and the Company may obtain background reports, throughout my employment or contract period.

By my signature below, I consent to preparation of background reports by a consumer reporting agency such as Kroll Background America, Inc. or HireRight, Inc., and to the release of such background reports to the Company and its designated representatives and agents, for the purpose of assisting Ares Management LLC (the "Company") in making a determination as to my eligibility for employment (including independent contractor assignments, as applicable), promotion, retention or for other lawful employment purposes.

I hereby authorize law enforcement agencies, learning institutions (including public and private schools and universities), information service bureaus, credit bureaus, record/data repositories, courts (federal, state and local), motor vehicle records agencies, my past or present employers, the military, and other individuals and sources to furnish any and all information on me that is requested by the consumer reporting agency.

By my signature below, I also certify the information I provided on and in connection with this form is true, accurate and complete. I agree that this form in original, faxed, photocopied or electronic (including electronically signed) form, will be valid for any background reports that may be requested by or on behalf of the Company.

☐ **California, Minnesota or Oklahoma applicants only:** Please check this box if you would like to receive (whenever you have such right under the applicable state law) a copy of your background report if one is obtained on you by the Company.

Applicant Last Name tacker          First christa          Middle leanne

Applicant Signature christa tacker          Date 11/2/14, 03:43:39 AM, Greer

## IDENTIFYING INFORMATION FOR CONSUMER REPORTING AGENCY

**Last Name:** tacker          **First Name:** christa          **Middle:** leanne

Other Names Used _____          Years Used _____

Current Address: 1010 east lee street          sherwood    AR    72120    pulski    10/1/12
                          Street /P. O. Box    City    State    Zip Code    County    Dates

Former Address: _____
                          Street /P. O. Box    City    State    Zip Code    County    Dates

*Social Security Number: ████████          Daytime Phone Number: 5018384771

E-mail Address: occupath2009@yahoo.com  Driver's License Number: ████████  State of Issuance: AR

*Date of Birth: 5/31/72          *Gender Female

* This information will be used only for background screening purposes and will not be taken into consideration in any employment decisions.

*Para informacion en español, visite www.ftc.gov/credit o escribe a la FTC Consumer Response Center, Room 130-A 600 Pennsylvania Ave., N.W., Washington, DC 20580*

**A SUMMARY OF YOUR RIGHTS
UNDER THE FAIR CREDIT REPORTING ACT**

The federal Fair Credit Reporting Act (FCRA) promotes the accuracy, fairness, and privacy of information in the files of consumer reporting agencies. There are many types of consumer reporting agencies, including credit bureaus and specialty agencies (such as agencies that sell information about check writing histories, medical records, and rental history records). Here is a summary of your major rights under the FCRA. **For more information, including information about additional rights, go to www.ftcgov/credit or write to: Consumer Response Center, Room 130-A, Federal Trade Commission, 600 Pennsylvania Ave. N.W., Washington, DC 20580.**

- ❑ **You must be told if information in your file has been used against you.** Anyone who uses a credit report or another type of consumer report to deny your application for credit, insurance, or employment – or to take another adverse action against you – must tell you, and must give you the name, address, and phone number of the agency that provided the information.

- ❑ **You have the right to know what is in your file.** You may request and obtain all the information about you in the files of a consumer reporting agency (your "file disclosure"). You will be required to provide proper identification, which may include your Social Security number. In many cases, the disclosure will be free. You are entitled to a free file disclosure if:

  - ❑ a person has taken adverse action against you because of information in your credit report;

  - ❑ you are the victim of identity theft and place a fraud alert in your file;

  - ❑ your file contains inaccurate information as a result of fraud;

  - ❑ you are on public assistance;

  - ❑ you are unemployed but expect to apply for employment within 60 days.

  In addition, by September 2005 all consumers will be entitled to one free disclosure every 12 months upon request from each nationwide credit bureau and from nationwide specialty consumer reporting agencies. See www.ftc.gov/credit for additional information.

- ❑ **You have the right to ask for a credit score.** Credit scores are numerical summaries of your credit-worthiness based on information from credit bureaus. You may request a credit score from consumer reporting agencies that create scores or distribute scores used in residential real property loans, but you will have to pay for it. In some mortgage transactions, you will receive credit score information for free from the mortgage lender.

- ❑ **You have the right to dispute incomplete or inaccurate information.** If you identify information in your file that is incomplete or inaccurate, and report it to the consumer reporting agency, the agency must investigate unless your dispute is frivolous. See www.ftc.gov/credit for an explanation of dispute procedures.

- ❑ **Consumer reporting agencies must correct or delete inaccurate, incomplete, or unverifiable information.** Inaccurate, incomplete or unverifiable information must be removed or corrected, usually within 30 days. However, a consumer agency may continue to report information it has verified as accurate.

❑ **Consumer reporting agencies may not report outdated negative information.**  In most cases, a consumer reporting agency may not report negative information that is more than seven years old, or bankruptcies that are more than 10 years old.

❑ **Access to your file is limited.**  A consumer reporting agency may provide information about you only to people with a valid need – usually to consider an application with a creditor, insurer, employer, landlord, or other business.  The FCRA specifies those with a valid need for access.

❑ **You must give your consent for reports to be provided to employers.**  A consumer reporting agency may not give out information about you to your employer, or a potential employer, without your written consent given to the employer.  Written consent generally is not required in the trucking industry.  For more information, go to www.ftc.gov/credit.

❑ **You may limit "prescreened" offers of credit and insurance you get based on information in your credit report.**  Unsolicited "prescreened" offers for credit and insurance must include a toll-free phone number you can call if you choose to remove your name and address from the lists these offers are based on.  You may opt-out with the nationwide credit bureaus at 1-888-567-8688.

❑ **You may seek damages from violators.**  If a consumer reporting agency, or, in some cases, a user of consumer reports or a furnisher of information to a consumer reporting agency violates the FCRA, you may be able to sue in state or federal court.

❑ **Identity theft victims and active duty military personnel have additional rights.**  For more information, visit www.ftc.gov/credit.

**States may enforce the FCRA, and many states have their own consumer reporting laws.  In some cases, you may have more rights under state law.  For more information, contact your state or local consumer protection agency or your state Attorney General.  Federal enforcers are:**

| TYPE OF BUSINESS: | PLEASE CONTACT: |
|---|---|
| Consumer reporting agencies, creditors and others not listed below | Federal Trade Commission: Consumer Response Center – FCRA<br>Washington, DC  20580  1-877-382-4357 |
| National banks, federal branches/agencies of foreign banks (word "National" or initials "N.A." appear in or after bank's name) | Office of the Comptroller of the Currency<br>Compliance Management, Mail Stop 6-6<br>Washington, DC  20219  800-613-6743 |
| Federal Reserve System member banks (except national banks, and federal branches/agencies of foreign banks) | Federal Reserve Board<br>Division of Consumer & Community Affairs<br>Washington, DC  20551  202-452-3693 |
| Savings associations and federally chartered savings banks (word "Federal" or initials "F.S.B." appear in federal institution's name) | Office of Thrift Supervision<br>Consumer Complaints<br>Washington, DC  20552  800-842-6929 |
| Federal credit unions (words "Federal Credit Union" appear in institution's name) | National Credit Union Administration<br>1775 Duke Street<br>Alexandria, VA  22314  703-519-4600 |
| State-chartered banks that are not members of the Federal Reserve System | Federal Deposit Insurance Corporation<br>Consumer Response Center<br>2345 Grand Avenue, Suite 100<br>Kansas City, MO  64108-2638<br>1-877-275-3342 |
| Air, surface, or rail common carriers regulated by former Civil Aeronautics Board or Interstate Commerce Commission | Department of Transportation, Office of Financial Management<br>Washington, DC  20590  202-366-1306 |
| Activities subject to the Packers and Stockyards Act, 1921 | Department of Agriculture<br>Office of Deputy Administrator- GIPSA<br>Washington, DC  20250  202-720-7051 |

# Personal Data Sheet

Kindred Healthcare New Employee

*This form is completely voluntary and is completed after hire.*

| Personal Data | | | | | |
|---|---|---|---|---|---|
| **Hire Date:** | | **Today's Date:** | | | |
| 11/10/14, 8:00 AM | | 11/3/14 | | | |
| **Department:** | | | | | |
| 634A342    Occupational Therapy | | | | | |
| **Full Name:** | | | | | |
| christa    leanne    tacker | | | | ☐ Male | ☑ Female |
| **Address:** | | | | | |
| 1010 east lee street | | sherwood | AR | 72120 | |
| **Home Phone:** | | **Alternate Phone:** | | | |
| 5018384771 | | 8704136388 | | | |
| **Personal Email Address:** | | | | | |
| occupath2009@yahoo.com | | | | | |
| **Social Security Number:** | | **Birthdate:** | | | |
| ▮▮▮▮▮▮ | | 5/31/72 | | | |
| **Spouse:** | | **Employer:** | | | |
| | | | | | |
| **Children:** | | | | | |
| austin floyd | | | | | |

| Emergency Contact | |
|---|---|
| **Name:** | **Relationship:** |
| stacey bankston | friend |
| **Day Phone:** | **Alternate Phone:** |
| 870-413-6388 | |



680 South Fourth Street ▪ Louisville, Kentucky 40202 ▪ (502) 596-7300

WEL0004
rev 5/13

**Please complete all sections to the best of your ability. * Indicates mandatory fields**

## Employment Verification

Please provide the information below as it pertains to your **two** most recent employers.

### Employer 1

*Employer Name: Reliant Rehbilitation

Employer Contact Name: _____

*Employer City: little rock

*Employer State: arkansas

*Employer Phone Number: 8704136388

Job Title During Employment: OTR

Dates Employed (mm/dd/yyyy): 9/19/11 ___ to 11/7/14

### Employer 2

*Employer Name: Delta Rehab

Employer Contact Name: _____

*Employer City: Pine bluff

*Employer State: arkansas

*Employer Phone Number: 5012851188

Job Title During Employment: OTR

Dates Employed (mm/dd/yyyy): 5/4/09 ___ to 9/12/11

### Professional License Verification

*Discipline: Occupational Therapist

*License # : OTR1688

*Expiration Date : _____

* State Issued: arkansas

## **Education Verification**

*Name of School: university arkansas at conway

*City and State: conway arkansas

If you have attended a school outside of the United States, please provide the following information:

Full Address:_____

Graduated: ☑ Yes    ☐ No    Major: _____

Dates Attended (mm/dd/yyyy): _____ to _____

## Acknowledgment and Receipt of Employee Handbook

I acknowledge receipt of People*first*'s Employee Handbook. I agree to carefully read the contents of the Handbook. I understand that the Handbook describes certain People*first* policies and procedures and is a guideline to assist People*first* employees in understanding and following those policies and procedures. I understand that this Handbook supersedes any Handbook(s) previously distributed by the Company.

I further understand that the Handbook is subject to change at the discretion of the Company and that the Company may deviate from, discontinue, modify or change policies and procedures as it deems necessary, except for the at-will status of employment. I accept responsibility for understanding and keeping informed of the contents of the Handbook and any changes. If I need clarification of the contents of the Handbook, I understand it is my responsibility to contact my supervisor or manager.

I understand that nothing contained in the Handbook, any policy, procedure or document issued by People*first*, or any statement of supervisors or managers, either verbal or written, is intended to create or suggest a contract between Kindred or People*first* and me for either employment or the provision of any benefit. I acknowledge that I am an at-will employee, which means I may resign or the Company/People*first* may terminate my employment at any time, with or without notice or cause. I further agree and understand that no one has any authority to enter into an agreement for employment for any specified period of time or to make any agreement contrary to this policy except in a written agreement expressly stating otherwise and signed by Kindred's Chief Executive Officer and me.

**I specifically acknowledge that I have read, understand and will comply with the Timekeeping for Non-Exempt Employees Policy on page 35 of this Handbook.**

| | |
|---|---|
| christa leanne tacker | phillip bass |
| Employee Name (printed) | Witness Name |
| christa tacker | Phillip Bass |
| Employee Signature | Witness Signature |
| 11/4/14, 03:01:20 AM, Greenwich Mean Time | 11/10/14, 09:08:10 PM, Greenwich Mean Time |
| Date | Date |

*This signed Acknowledgment and Receipt will be retained in your personnel file.*

# Certificate of Compliance

1. I have read the entire Code of Conduct. I have had the opportunity to ask any questions with regard to its contents and I understand fully how the policies relate to my position.

2. I hereby acknowledge my obligation and agreement to fulfill those duties and responsibilities as set forth in the Code of Conduct and to be bound by these standards.

3. I further certify that, throughout the remainder of my association with the Company, I shall continue to comply with the terms of the Code of Conduct.

4. I understand that violations of the Code of Conduct may lead to disciplinary action, including discharge.

christa tacker                                                      11/4/14, 03 03:52 AM, Greenwich Mean Time
_____
Signature                                                          Date
christa leanne tacker
_____
Printed Name

_____
Title/Position within the Company

_____
Facility Name

_____
Business Telephone Number (with Area Code)

*The first copy is to be retained by the employee/officer/Board Member/contractor.*
*The second copy is to be retained for the employee/officer/Board Member/contractor's record.*

-------------------------------------------------------------------------------

# Certificate of Compliance

1. I have read the entire Code of Conduct. I have had the opportunity to ask any questions with regard to its contents and I understand fully how the policies relate to my position.

2. I hereby acknowledge my obligation and agreement to fulfill those duties and responsibilities as set forth in the Code of Conduct and to be bound by these standards.

3. I further certify that, throughout the remainder of my association with the Company, I shall continue to comply with the terms of the Code of Conduct.

4. I understand that violations of the Code of Conduct may lead to disciplinary action, including discharge.

christa tacker                                                      11/4/14, 03:03:52 AM, Greenwich Mean Time
_____
Signature                                                          Date
christa leanne tacker
_____
Printed Name

_____
Title/Position within the Company

_____
Facility Name

_____
Business Telephone Number (with Area Code)

*The first copy is to be retained by the employee/officer/Board Member/contractor.*
*The second copy is to be retained for the employee/officer/Board Member/contractor's record.*

# Resident Rights - Federal

The Resident has a right to a dignified existence, self-determination, and communication with and access to persons and services inside and outside the Center. A Center must protect and promote the rights of each Resident, including each of the following rights:

(a) Exercise of rights.

(1) The Resident has the right to exercise his or her rights as a resident of the Center and as a citizen or resident of the United States.

(2) The Resident has the right to be free of interference, coercion, discrimination, and reprisal from the Center in exercising his or her rights.

(3) In the case of a resident adjudged incompetent under the laws of a State by a court of competent jurisdiction, the rights of the Resident are exercised by the person appointed under State law to act on the Resident's behalf.

(4) In the case of a resident who has not been adjudged incompetent by the State court, any legal-surrogate designated in accordance with State law may exercise the Resident's rights to the extent provided by State law.

(b) Notice of rights and services.

(1) The Center must inform the Resident both orally and in writing in a language that the Resident understands of his or her rights and all rules and regulations governing resident conduct and responsibilities during the stay in the Center. The Center must also provide the Resident with the notice (if any) of the State developed under section 1919(e)(6) of the Act. Such notification must be made prior to or upon admission and during the Resident's stay. Receipt of such information, and any amendments to it, must be acknowledged in writing;

(2) The Resident or his or her legal representative has the right --

(i) Upon an oral or written request, to access all records pertaining to himself or herself including current clinical records within 24 hours (excluding weekends and holidays); and

(ii) After receipt of his or her records for inspection, to purchase at a cost not to exceed the community standard photocopies of the records or any portions of them upon request and 2 working days advance notice to the Center.

(3) The Resident has the right to be fully informed in language that he or she can understand of his or her total health status, including but not limited to, his or her medical condition;

(4) The Resident has the right to refuse treatment, to refuse to participate in experimental research, and to formulate an advance directive as specified in paragraph (8) of this section; and

(5) The Center must --

(i) Inform each resident who is entitled to Medicaid benefits, in writing, at the time of admission to the nursing Center or, when the Resident becomes eligible for Medicaid of:

(A) The services and items that are included in nursing Center services under the State plan and for which the Resident may not be charged;

(B) Those other services and items that the Center offers and for which the Resident may be charged, and the amount of charges for those services; and

(ii) Inform each resident when changes are made to the services and items specified in paragraphs (5)(i) (A) and (B) of this section.

(6) The Center must inform each resident before, or at the time of admission, and periodically during the Resident's stay, of services available in the Center and of charges for those services, including any charges for services not covered under Medicare or by the Center's per diem rate.

(7) The Center must furnish a written description of legal rights that includes --

(i) A description of the manner of protecting personal funds, under paragraph (c) of this section;

(ii) A description of the requirements and procedures for establishing eligibility for Medicaid, including the right to request an assessment under section 1924(c) which determines the extent of a couple's non-exempt resources at the time of institutionalization and attributes to the community spouse an equitable share of resources which cannot be considered available for payment toward the cost of the institutionalized spouse's medical care in his or her process of spending down to Medicaid eligibility levels;

(iii) A posting of names, addresses, and telephone numbers of all pertinent State client advocacy groups such as the State survey and certification agency, the State licensure office, the State ombudsman program, the protection and advocacy network, and the Medicaid fraud control unit; and

(iv) A statement that the Resident may file a complaint with the State survey and certification agency concerning resident abuse, neglect, misappropriation of resident property in the Center, and non-compliance with the advance directives requirements.

(8) The Center must comply with the requirements specified in subpart I of part 489 of this chapter relating to maintaining written policies and procedures regarding advance directives. These requirements include provisions to inform and provide written information to all adult residents concerning the right to accept or refuse medical or surgical treatment and, at the individual's option, formulate advance directives. This includes a written description of the Center's policies to implement advance directives and applicable State law. Facilities are permitted to contract with other entities to furnish this information but are still legally responsible for ensuring that the requirements of this section are met.  If an adult individual is incapacitated at the time of admission and is unable to receive information (due to the incapacitating condition or a mental disorder) or articulate whether or not he or she has executed advance directives, the Center may give advance directives information to the individual's family or surrogate in the same manner that it issues other materials about policies and procedures to the family of the incapacitated individual or to a surrogate or other concerned persons in accordance with State law. The Center is not relieved of its obligation to provide this information to the individual once he or she is no longer incapacitated or unable to receive such information. Follow-up procedures must be in place to provide the information to the individual directly at the appropriate time.

(9) The Center must inform each resident of the name, specialty, and way of contacting the physician responsible for his or her care.

(10) The Center must prominently display in the Center written information, and provide to residents and applicants for admission oral and written information about how to apply for and use Medicare and Medicaid benefits, and how to receive refunds for previous payments covered by such benefits.

(11) Notification of changes.

(i) A Center must immediately inform the Resident; consult with the Resident's physician; and if known, notify the Resident's legal representative or an interested family member when there is:

(A) An accident involving the Resident which results in injury and has the potential for requiring physician intervention;

(B) A significant change in the Resident's physical, mental, or psychosocial status (i.e., a deterioration in health, mental, or psychosocial status in either life-threatening conditions or clinical complications);

(C) A need to alter treatment significantly (i.e., a need to discontinue an existing form of treatment due to adverse consequences, or to commence a new form of treatment); or

(D) A decision to transfer or discharge the Resident from the Center as specified in § 483.12(a).

(ii) The Center must also promptly notify the Resident and, if known, the Resident's legal representative or interested family member when there is:

(A) A change in room or roommate assignment as specified in § 483.15(e)(2); or

(B) A change in resident rights under Federal or State law or regulations as specified in paragraph (b)(1) of this section.

(iii) The Center must record and periodically update the address and phone number of the Resident's legal representative or interested family member.

(12) Admission to a composite distinct part. A Center that is a composite distinct part (as defined in §483.5(c) of this subpart) must disclose in its admission agreement its physical configuration, including the various locations that comprise the composite distinct part, and must specify the policies that apply to room changes between its different locations under § 483.12(a)(8).

(c)  Protection of Resident Funds.

(1) The Resident has the right to manage his or her financial affairs, and the Center may not require residents to deposit their personal funds with the Center.

(2) Management of personal funds. Upon written authorization of a resident, the Center must hold, safeguard, manage, and account for the personal funds of the Resident deposited with the Center, as specified in paragraphs (c)(3)-(8) of this section.

(3) Deposit of funds.

(i) Funds in excess of $50. The Center must deposit any residents' personal funds in excess of $50 in an interest bearing account (or accounts) that is separate from any of the Center's operating accounts, and that credits all interest earned on resident's funds to that account. (In pooled accounts, there must be a separate accounting for each resident's share.)

(ii) Funds less than $50. The Center must maintain a resident's personal funds that do not exceed $50 in a non-interest bearing account, interest-bearing account, or petty cash fund.

(4) Accounting and records. The Center must establish and maintain a system that assures a full and complete and separate accounting, according to generally accepted accounting principles, of each resident's personal funds entrusted to the Center on the Resident's behalf.

(i) The system must preclude any commingling of resident funds with Center funds or with the funds of any person other than another resident.

(ii) The individual financial record must be available through quarterly statements and on request to the Resident or his or her legal representative.

(5) Notice of certain balances. The Center must notify each resident that receives Medicaid benefits --

(i) When the amount in the Resident's account reaches $200 less than the SSI resource limit for one person, specified in section 1611(a)(3)(B) of the Act; and

(ii) That, if the amount in the account, in addition to the value of the Resident's other nonexempt resources, reaches the SSI resource limit for one person, the Resident may lose eligibility for Medicaid or SSI.

(6) Conveyance upon death. Upon the death of a resident with a personal fund deposited with the Center, the Center must convey within 30 days the Resident's funds, and a final accounting of those funds, to the individual or probate jurisdiction administering the Resident's estate.

(7) Assurance of financial security. The Center must purchase a surety bond, or otherwise provide assurance satisfactory to the Secretary, to assure the security of all personal funds of residents deposited with the Center.

(8) Limitation on charges to personal funds. The Center may not impose a charge against the personal funds of a resident for any item or service for which payment is made under Medicaid or Medicare (except for applicable deductible and coinsurance amounts).  The Center may charge the Resident for requested services that are more expensive than or in excess of covered services in accordance with § 489.32 of this chapter. (This does not affect the prohibition on Center charges for services and items for which Medicaid has paid. See § 447.15, which limits participation in the Medicaid program to providers who accept, as payment in full, Medicaid payment plus any deductible, coinsurance, or co-payment required by the plan to be paid by the individual.)

(i) Services included in Medicare or Medicaid payment. During the course of a covered Medicare or Medicaid stay, Centers may not charge a resident for the following categories of services and items:

(A) Nursing services as required at § 483.30 of this subpart.

(B) Dietary services as required at § 483.35 of this subpart.

(C) An activities program as required at § 483.15(f) of this subpart.

(D) Room/bed maintenance services.

(E) Routine personal hygiene services and items as required to meet the needs of residents, including, but not limited to, hair hygiene supplies, comb, brush, bath soap, disinfecting soaps or specialized cleansing agents when indicated to treat special skin problems or to fight infection, razor, shaving cream, toothbrush, toothpaste, denture adhesive, denture cleaner, dental floss, moisturizing lotion, tissues, cotton balls, cotton swabs, deodorant, incontinence care and supplies, sanitary napkins and related supplies, towels, washcloths, hospital gowns, over the counter drugs, hair and nail hygiene services, bathing, and basic personal laundry.

(F) Medically-related social services as required at § 483.15(g) of this subpart.

(ii) Services and items that may be charged to residents' funds. Listed below are general categories and examples of services and items that the Center may charge to residents' funds if they are requested by a resident, if the Center informs the Resident that there will be a charge, and if payment is not made by Medicare or Medicaid:

(A) Telephone.

(B) Television/radio for personal use.

(C) Personal comfort items, including smoking materials, notions and novelties, and confections.

(D) Cosmetic and grooming services and items in excess of those for which payment is made under Medicaid or Medicare.

(E) Personal clothing.

(F) Personal reading matter.

(G) Gifts purchased on behalf of a resident.

(H) Flowers and plants.

(I) Social events and entertainment offered outside the scope of the activities program, provided under § 483.15(f) of this subpart.

(J) Noncovered special care services such as privately hired nurses or aides.

(K) Private room, except when therapeutically required (for example, isolation for infection control).

(L) Specially prepared or alternative food requested instead of the food generally prepared by the Center, as required by § 483.35 of this subpart.

(iii) Requests for services and items.

(A) The Center must not charge a resident (or his or her representative) for any item or service not requested by the Resident.

(B) The Center must not require a resident (or his or her representative) to request any item or service as a condition of admission or continued stay.

(C) The Center must inform the Resident (or his or her representative) requesting an item or service for which a charge will be made that there will be a charge for the item or service and what the charge will be.

(d) <u>Free choice</u>. The Resident has the right to:

(1) Choose a personal attending physician;

(2) Be fully informed in advance about care and treatment and of any changes in that care or treatment that may affect the Resident's well-being; and

(3) Unless adjudged incompetent or otherwise found to be incapacitated under the laws of the State, participate in planning care and treatment or changes in care and treatment.

(e) <u>Privacy and confidentiality</u>. The Resident has the right to personal privacy and confidentiality of his or her personal and clinical records. [See also, Attachment E, Notice of Privacy Practices.]

(1) Personal privacy includes accommodations, medical treatment, written and telephone communications, personal care, visits, and meetings of family and resident groups, but this does not require the Center to provide a private room for each resident;

(2) Except as provided in paragraph (e)(3) of this section, the Resident may approve or refuse the release of personal and clinical records to any individual outside the Center;

(3) The Resident's right to refuse release of personal and clinical records does not apply when:

(i) The Resident is transferred to another health care institution; or

(ii) Record release is required by law.

(f) <u>Grievances</u>. A resident has the right to:

(1) Voice grievances without discrimination or reprisal. Such grievances include those with respect to treatment which has been furnished as well as that which has not been furnished; and

(2) Prompt efforts by the Center to resolve grievances the Resident may have, including those with respect to the behavior of other residents.

(g) <u>Examination of survey results</u>. A resident has the right to:

(1) Examine the results of the most recent survey of the Center conducted by Federal or State surveyors and any plan of correction in effect with respect to the Center. The Center must make the results available for examination in a place readily accessible to residents, and must post a notice of their availability; and

(2) Receive information from agencies acting as client advocates, and be afforded the opportunity to contact these agencies.

(h) <u>Work</u>. The Resident has the right to:

(1) Refuse to perform services for the Center;

(2) Perform services for the Center, if he or she chooses, when:

(i) The Center has documented the need or desire for work in the plan of care;

(ii) The plan specifies the nature of the services performed and whether the services are voluntary or paid;

(iii) Compensation for paid services is at or above prevailing rates; and

(iv) The Resident agrees to the work arrangement described in the plan of care.

(i) <u>Mail</u>. The Resident has the right to privacy in written communications, including the right to:

(1) Send and promptly receive mail that is unopened; and

(2) Have access to stationery, postage, and writing implements at the Resident's own expense.

(j) <u>Access and visitation rights</u>.

(1) The Resident has the right and the Center must provide immediate access to any resident by the following:

(i) Any representative of the Secretary;

(ii) Any representative of the State:

(iii) The Resident's individual physician;

(iv) The State long term care ombudsman (established under section 307(a)(12) of the Older Americans Act of 1965);

(v) The agency responsible for the protection and advocacy system for developmentally disabled individuals (established under part C of the Developmental Disabilities Assistance and Bill of Rights Act);

(vi) The agency responsible for the protection and advocacy system for mentally ill individuals (established under the Protection and Advocacy for Mentally Ill Individuals Act);

(vii) Subject to the Resident's right to deny or withdraw consent at any time, immediate family or other relatives of the Resident; and

(viii) Subject to reasonable restrictions and the Resident's right to deny or withdraw consent at any time, others who are visiting with the consent of the Resident.

(2) The Center must provide reasonable access to any resident by any entity or individual that provides health, social, legal, or other services to the Resident, subject to the Resident's right to deny or withdraw consent at any time.

(3) The Center must allow representatives of the State Ombudsman, described in paragraph (j)(1)(iv) of this section, to examine a resident's clinical records with the permission of the Resident or the Resident's legal representative, and consistent with State law.

(k) <u>Telephone</u>. The Resident has the right to have reasonable access to the use of a telephone where calls can be made without being overheard.

(l)  Personal property. The Resident has the right to retain and use personal possessions, including some furnishings, and appropriate clothing, as space permits, unless to do so would infringe upon the rights or health and safety of other residents.

(m)  Married couples. The Resident has the right to share a room with his or her spouse when married residents live in the same Center and both spouses consent to the arrangement.

(n)  Self-Administration of Drugs. An individual resident may self-administer drugs if the interdisciplinary team, as defined by § 483.20(d)(2)(ii), has determined that this practice is safe.

(o)  Refusal of certain transfers.

(1) An individual has the right to refuse a transfer to another room within the institution, if the purpose of the transfer is to relocate:

(i) A resident of a SNF from the distinct part of the institution that is a SNF to a part of the institution that is not a SNF, or

(ii) A resident of a NF from the distinct part of the institution that is a NF to a distinct part of the institution that is a SNF.

(2) A resident's exercise of the right to refuse transfer under paragraph (o)(1) of this section does not affect the individual's eligibility or entitlement to Medicare or Medicaid benefits.



# Patient/Resident Confidentiality Agreement

Confidentiality of patient's/resident's hospitalization, history and behavior will be maintained at all times. Discussions of patients/residents must be conducted in private and must be directed towards patient/resident care.

A. It is the obligation of each employee to protect the confidentiality of any private information which the employee may acquire from a patient/resident or from any source about a patient/resident.

B. Knowledge which is gained in an employee-patient/resident relationship may be essential in planning the patient's/resident's care. When this is the case, the employee must use judgment to avoid improper disclosure. Only information which is necessary in giving required care may be disclosed.

C. There are times when an employee may be required to give testimony in court concerning confidential information about a patient/resident. Any employee who is subpoenaed to appear in court on a facility matter should report this fact to his/her supervisor immediately. In such cases, the facility will arrange the necessary legal advice and guidance.

D. The importance of avoiding gossip and idle talk about the facility in the presence of patients/residents cannot be overemphasized. Employees should be especially careful to avoid discussion of facility matters and patients/residents in the cafeteria, in hallways and at nursing station areas, as well as in the community and with family and friends.

E. Only the following individuals may have access to patients'/residents' charts: attending staff, attending and/or consulting physicians, allied health professionals and consulting dietitians. It is the responsibility of the staff to prohibit any other person, including other physicians and facility staff from other departments, to read a patient's/resident's chart.

F. All employees of Kindred facilities are required to sign this PATIENT/RESIDENT CONFIDENTIALITY AGREEMENT which will be maintained in their personnel file.

**I HAVE READ THE ABOVE AGREEMENT AND UNDERSTAND THAT ANY VIOLATION OF PATIENT/RESIDENT CONFIDENTIALITY IS GROUNDS FOR IMMEDIATE DISCHARGE.**

christa tacker
_____     11/4/14, 03:03:14 AM, Greenwich Mean Ti
Employee signature                                          Date

christa leanne tacker
_____
Print name

 **Timekeeping for Non-Exempt Employees Policy**

As required by federal and state law, the exact hours you have worked must always be accurately recorded in the payroll system. Therefore, you must accurately record all time that you work on your Daily Activity Report ("DAR"), indicating when you start work, take your meal break, end work and when you leave your work location for personal reasons. Non-exempt employees who are not assigned to a facility, travel or who do not have access to a time clock must also accurately record all time worked, including the start and end of each shift, appropriate travel time, and meal and break periods on the timekeeping form required by your supervisor. Contact Human Resources for information.

You should not perform work prior to the beginning of or after the end of your shift. You may not start work earlier than 7 minutes prior to the beginning of your reporting time. Allow yourself enough time to report for work, in uniform, in your assigned department at your scheduled start time.

If you are authorized to perform work while on call or otherwise not on duty and/or away from your work location, you must record the time and describe the work performed a DAR or the timekeeping record required by your supervisor. All DARs and timekeeping forms must  be submitted to your supervisor as soon as possible. If your job duties do not require you to perform work on call or otherwise not on duty and/or away from your work location, you may not engage in such work without prior approval from your supervisor. While you will be paid for all time worked, whether or not the time was approved in advance, failure to obtain appropriate approval may result in discipline, up to and including separation of employment.

**This policy prohibits "off-the-clock" work under all circumstances. You must record all hours that you work, including any time worked before or after the completion of your shift, while at home, while on call, during an interrupted meal break, or for a missed meal break whether or not the time has been approved, using the timekeeping form required by your supervisor.** If you perform any work during your 30-minute meal break, then you will be paid for the entire meal break.
**This policy also prohibits any employee from preparing a DAR or other timekeeping form for another employee. It is also a serious violation of Company policy for any employee to instruct an employee to incorrectly or falsely report hours worked or alter another employee's DAR or other timekeeping form to under- or over-report hours worked.**

**You should report any violations of these policies immediately to your supervisor, Area Rehab Director or Human Resources.**

**Overtime for Non-Exempt Employees**
Non-exempt employees are paid overtime in accordance with state and federal wage and hour laws. This means that you will be paid one and one-half times your regular rate of pay for all hours actually worked over 40 in a single workweek or as otherwise required by applicable law.

Only hours actually worked count for the purpose of overtime calculation. Hours actually worked do not include any non-working hours, such as holiday, PTO and sick time, even though those hours are paid.

Your supervisor must approve overtime work in advance. While you will be paid for all hours worked, including overtime, whether or not the time was approved in advance, the failure to obtain appropriate approval may result in discipline, up to and including separation of employment.

Because we must maintain adequate staff at all times to care for our patients and residents, you are expected to work overtime as requested by your supervisor. You may not take work home without prior approval from your supervisor, and documents containing confidential information may not be removed from your work location.

**If you have any questions about computing wages and overtime pay, please consult with your supervisor, or Human Resources Assistant.**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**Acknowledgment and Receipt of Timekeeping for Non-Exempt Employees and Breaks for Non-Exempt Employees Policies**

I acknowledge receipt of the Kindred Policies regarding Timekeeping for Non-Exempt Employees and Breaks for Non-Exempt Employees.
I further understand that these policies are subject to change at the discretion of the Company and that the Company may deviate from, discontinue, modify or change policies and procedures as it deems necessary. I accept responsibility for understanding and keeping informed of any changes. If I need clarification of the contents of these policies, I understand it is my responsibility to contact my supervisor or manager.
**I understand that if I am covered by a collective bargaining agreement, the bargaining agreement supersedes these policies in areas where the bargaining agreement and the policies conflict.**

| | |
|---|---|
| christa leanne tacker | phillip bass |
| Employee Name (printed) | Witness Name (printed) |
| christa tacker | Phillip Bass |
| Employee Signature | Witness Signature |
| 11/4/14, 03:01:33 AM, Greenwich Mean Time | 11/10/14, 09:07:34 PM, Greenwich Mean Time |
| Date | Date        (12/27/10) |

# APPLICANT FOR EMPLOYMENT

## NOTICE OF DRUG AND ALCOHOL TESTING

Kindred Healthcare is committed to providing a safe and productive work environment for its employees. All applicants who have been conditionally offered employment must undergo drug and alcohol testing. This testing requires the applicant to provide a urine specimen for chemical or other analysis. Its purpose is to rule out the presence of non-prescribed or prohibited controlled substances. Refusal to submit a specimen for analysis, attempts to adulterate or alter the specimen, or a positive test for illegal drug use will result in the immediate withdrawal of an offer of employment.

## AUTHORIZATION FOR DRUG AND ALCOHOL TESTING

I, christa leanne tacker _____ (Print Name). do hereby acknowledge and understand that, upon an offer of employment, I will be required to provide a urine specimen for chemical or other analysis. The purpose of this analysis is to determine or rule out the presence of non-prescribed or prohibited controlled substances in my system. I also understand that my refusal to take this test, attempts to adulterate or alter the specimen, or a positive test for illegal drug use will result in the immediate withdrawal of any offer of employment.

christa tacker _____

Signature of Applicant

11/2/14, 03:43:39 AM, Gr

Date



**Post-Offer Invitation to Self-Identify**

We invite you to voluntarily complete the following information. Contents of this form are considered "CONFIDENTIAL" and are used to report employment statistics as required by states and the federal government and for purposes of affirmative action. The information is not used for any other purpose whatsoever and is maintained separately from your personnel records.

**Name:** christa leanne tacker          **Facility Number/Name:** 634A - Arkansas Convalescent C

**Please indicate your gender:** Female

**Please indicate your race and ethnic identification:** White

**Hispanic or Latino** – A person of Cuban, Mexican, Puerto Rican, South or Central American or other Spanish culture or origin, regardless of race.

**White (Not Hispanic or Latino)** – A person having origins in any of the original peoples of Europe, the Middle East, or North Africa.

**Black or African American (Not Hispanic or Latino)** – A person having origins in any of the black racial groups of Africa.

**Native Hawaiian or Other Pacific Islander (Not Hispanic or Latino)** – A person having origins in any of the original peoples of Hawaii, Guam, Samoa, or other Pacific Islands.

**Asian (Not Hispanic or Latino)** – A person having origins in any of the original peoples of the Far East, Southeast Asia, or the Indian Subcontinent, including, for example, Cambodia, China, India, Japan, Korea, Malaysia, Pakistan, the Philippine Islands, Thailand, and Vietnam.

**American Indian or Alaska Native (Not Hispanic or Latino)** – A person having origins in any of the original peoples of North and South America (including Central America), and who maintains tribal affiliation or community attachment.

**Two or More Races (Not Hispanic or Latino)** – A person who identifies with more than one race (i.e. White, Black/African American, Native Hawaiian/Other Pacific Islander, Asian, or American Indian/Alaska Native).

As a federal contractor subject to VEVRAA, we are required to submit a report to the United States Department of Labor each year identifying the number of our employees belonging to each specified "protected veteran" category. If you believe you belong to any of the categories of protected veterans listed below, please indicate by checking the appropriate box below.

**Please indicate your veteran status (if applicable):**

**Disabled Veteran** – means (i) a veteran of the U.S. military, ground, naval or air service who is entitled to compensation (or who but for the receipt of military retired pay would be entitled to compensation) under laws administered by the Secretary of Veterans Affairs, or (ii) a person who was discharged or released from active duty because of a service-connected disability.

**Recently Separated Veteran** – means a veteran discharged or released from active duty in the U.S. military, ground, naval or air service **during the past three-year period**.
          Date of Discharge or Release:

**Active Duty Wartime or Campaign Badge Veteran** – means a veteran who served on active duty in the U.S. military, ground, naval or air service during a war, or in a campaign or expedition for which a campaign badge has been authorized under the laws administered by the Department of Defense.

**Armed Forces Service Medal Veteran** – means a veteran who, while serving on active duty in the U.S. military, ground, naval or air service, participated in a Unites States military operation for which an Armed Forces service medal was awarded pursuant to Executive Order 12985 (61 FR 1209).

*This facility is subject to VEVRAA and the Rehabilitation Act of 1973, as amended, which requires this facility to take affirmative action to employ and advance in employment qualified individuals with disabilities and covered veterans. If you would like to be included under our affirmative action program or would like additional information regarding the program, please contact your facility administrator between 9:00 a.m. and 5:00 p.m. If you have a disability or are a special disabled veteran, it would assist us if you tell us about any special methods, skills or procedures which qualify you for positions that you might not otherwise be able to do because of your disability so that you will be considered for any position of that kind. This information will assist us in placing you in an appropriate position and in making accommodations for your disability. You may inform us of your desire to benefit under our affirmative action program now and/or at any time in the future by contacting your facility administrator between 9:00 a.m. and 5:00 p.m. Submission of this information is voluntary and refusal to provide it will not subject you to any adverse treatment. Information that you submit about your disability will be kept confidential and will not be used in a manner inconsistent with VEVRAA.*

christa tacker                                    11/2/14, 03:53:35 AM, Greenwich Mean Time
_____                    _____
Employee Signature                                Date

**File Separately from Employee's Personnel File**                    Rev. 3.24.14

## Voluntary Self-Identification of Disability

Form CC-305
OMB Control Number 1250-0005
Expires 1/31/2017
Page 1 of 2

### Why are you being asked to complete this form?

Because we do business with the government, we must reach out to, hire, and provide equal opportunity to qualified people with disabilities.[i]  To help us measure how well we are doing, we are asking you to tell us if you have a disability or if you ever had a disability.  Completing this form is voluntary, but we hope that you will choose to fill it out.  If you are applying for a job, any answer you give will be kept private and will not be used against you in any way.

If you already work for us, your answer will not be used against you in any way.  Because a person may become disabled at any time, we are required to ask all of our employees to update their information every five years.  You may voluntarily self-identify as having a disability on this form without fear of any punishment because you did not identify as having a disability earlier.

### How do I know if I have a disability?

You are considered to have a disability if you have a physical or mental impairment or medical condition that substantially limits a major life activity, or if you have a history or record of such an impairment or medical condition.

Disabilities include, but are not limited to:

- Blindness
- Deafness
- Cancer
- Diabetes
- Epilepsy

- Autism
- Cerebral palsy
- HIV/AIDS
- Schizophrenia
- Muscular dystrophy

- Bipolar disorder
- Major depression
- Multiple sclerosis (MS)
- Missing limbs or partially missing limbs

- Post-traumatic stress disorder (PTSD)
- Obsessive compulsive disorder
- Impairments requiring the use of a wheelchair
- Intellectual disability (previously called mental retardation)

**Please check one of the boxes below**:

[ ] YES, I HAVE A DISABILITY (or previously had a disability)

[ ] NO, I DON'T HAVE A DISABILITY

[✓] I DON'T WISH TO ANSWER

christa tacker
_____
Your Name

11/2/14, 03:53:35 AM, Greenwich Mean Time
_____
Today's Date

## Voluntary Self-Identification of Disability

Form CC-305
OMB Control Number 1250-0005
Expires 1/31/2017
Page 2 of 2

### Reasonable Accommodation Notice

Federal law requires employers to provide reasonable accommodation to qualified individuals with disabilities. Please tell us if you require a reasonable accommodation to apply for a job or to perform your job.  Examples of reasonable accommodation include making a change to the application process or work procedures, providing documents in an alternate format, using a sign language interpreter, or using specialized equipment.

---

[i] Section 503 of the Rehabilitation Act of 1973, as amended.  For more information about this form or the equal employment obligations of Federal contractors, visit the U.S. Department of Labor's Office of Federal Contract Compliance Programs (OFCCP) website at www.dol.gov/ofccp.

PUBLIC BURDEN STATEMENT:  According to the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless such collection displays a valid OMB control number. This survey should take about 5 minutes to complete.

# Form W-4 (2014)

**Purpose.** Complete Form W-4 so that your employer can withhold the correct federal income tax from your pay. Consider completing a new Form W-4 each year and when your personal or financial situation changes.

**Exemption from withholding.** If you are exempt, complete **only** lines 1, 2, 3, 4, and 7 and sign the form to validate it. Your exemption for 2014 expires February 17, 2015. See Pub. 505, Tax Withholding and Estimated Tax.

**Note.** If another person can claim you as a dependent on his or her tax return, you cannot claim exemption from withholding if your income exceeds $1,000 and includes more than $350 of unearned income (for example, interest and dividends).

*Exceptions.* An employee may be able to claim exemption from withholding even if the employee is a dependent, if the employee:

• Is age 65 or older,

• Is blind, or

• Will claim adjustments to income; tax credits; or itemized deductions, on his or her tax return.

The exceptions do not apply to supplemental wages greater than $1,000,000.

**Basic instructions.** If you are not exempt, complete the **Personal Allowances Worksheet** below. The worksheets on page 2 further adjust your withholding allowances based on itemized deductions, certain credits, adjustments to income, or two-earners/multiple jobs situations.

Complete all worksheets that apply. However, you may claim fewer (or zero) allowances. For regular wages, withholding must be based on allowances you claimed and may not be a flat amount or percentage of wages.

**Head of household.** Generally, you can claim head of household filing status on your tax return only if you are unmarried and pay more than 50% of the costs of keeping up a home for yourself and your dependent(s) or other qualifying individuals. See Pub. 501, Exemptions, Standard Deduction, and Filing Information, for information.

**Tax credits.** You can take projected tax credits into account in figuring your allowable number of withholding allowances. Credits for child or dependent care expenses and the child tax credit may be claimed using the **Personal Allowances Worksheet** below. See Pub. 505 for information on converting your other credits into withholding allowances.

**Nonwage income.** If you have a large amount of nonwage income, such as interest or dividends, consider making estimated tax payments using Form 1040-ES, Estimated Tax for Individuals. Otherwise, you may owe additional tax. If you have pension or annuity income, see Pub. 505 to find out if you should adjust your withholding on Form W-4 or W-4P.

**Two earners or multiple jobs.** If you have a working spouse or more than one job, figure the total number of allowances you are entitled to claim on all jobs using worksheets from only one Form W-4. Your withholding usually will be most accurate when all allowances are claimed on the Form W-4 for the highest paying job and zero allowances are claimed on the others. See Pub. 505 for details.

**Nonresident alien.** If you are a nonresident alien, see Notice 1392, Supplemental Form W-4 Instructions for Nonresident Aliens, before completing this form.

**Check your withholding.** After your Form W-4 takes effect, use Pub. 505 to see how the amount you are having withheld compares to your projected total tax for 2014. See Pub. 505, especially if your earnings exceed $130,000 (Single) or $180,000 (Married).

**Future developments.** Information about any future developments affecting Form W-4 (such as legislation enacted after we release it) will be posted at *www.irs.gov/w4*.

## Personal Allowances Worksheet (Keep for your records.)

| | | | |
|---|---|---|---|
| A | Enter "1" for **yourself** if no one else can claim you as a dependent . . . . . . . . . . . . . . . . | **A** | _____ |
| B | Enter "1" if: | • You are single and have only one job; or | |
| | | • You are married, have only one job, and your spouse does not work; or | **B** _____ |
| | | • Your wages from a second job or your spouse's wages (or the total of both) are $1,500 or less. | |
| C | Enter "1" for your **spouse**. But, you may choose to enter "-0-" if you are married and have either a working spouse or more than one job. (Entering "-0-" may help you avoid having too little tax withheld.) . . . . . . . . . | **C** _____ |
| D | Enter number of **dependents** (other than your spouse or yourself) you will claim on your tax return . . . . . . . | **D** _____ |
| E | Enter "1" if you will file as **head of household** on your tax return (see conditions under **Head of household** above) . | **E** _____ |
| F | Enter "1" if you have at least $2,000 of **child or dependent care expenses** for which you plan to claim a credit . . . | **F** _____ |
| | (**Note.** Do **not** include child support payments. See Pub. 503, Child and Dependent Care Expenses, for details.) | |
| G | **Child Tax Credit** (including additional child tax credit). See Pub. 972, Child Tax Credit, for more information. | |
| | • If your total income will be less than $65,000 ($95,000 if married), enter "2" for each eligible child; then **less** "1" if you have three to six eligible children or **less** "2" if you have seven or more eligible children. | |
| | • If your total income will be between $65,000 and $84,000 ($95,000 and $119,000 if married), enter "1" for each eligible child . . . . | **G** _____ |
| H | Add lines A through G and enter total here. (**Note.** This may be different from the number of exemptions you claim on your tax return.) ▶ **H** _____ |

| | |
|---|---|
| For accuracy, complete all worksheets that apply. | • If you plan to **itemize or claim adjustments to income** and want to reduce your withholding, see the **Deductions and Adjustments Worksheet** on page 2. |
| | • If you are **single and have more than one job** or are **married and you and your spouse both work** and the combined earnings from all jobs exceed $50,000 ($20,000 if married), see the **Two-Earners/Multiple Jobs Worksheet** on page 2 to avoid having too little tax withheld. |
| | • If **neither** of the above situations applies, **stop here** and enter the number from line H on line 5 of Form W-4 below. |

-------------------- **Separate here and give Form W-4 to your employer. Keep the top part for your records.** --------------------

| Form **W-4**<br>Department of the Treasury<br>Internal Revenue Service | **Employee's Withholding Allowance Certificate**<br>▶ Whether you are entitled to claim a certain number of allowances or exemption from withholding is subject to review by the IRS. Your employer may be required to send a copy of this form to the IRS. | | OMB No. 1545-0074<br>20**14** |
|---|---|---|---|
| **1** Your first name and middle initial<br>christa    leanne | Last name<br>tacker | | **2** Your social security number |
| Home address (number and street or rural route)<br>1010 east lee street | **3** ☑ Single ☐ Married ☐ Married, but withhold at higher Single rate.<br>**Note.** If married, but legally separated, or spouse is a nonresident alien, check the "Single" box. | | |
| City or town, state, and ZIP code<br>sherwood    Arkansas    72120 | **4** If your last name differs from that shown on your social security card,<br>check here. You must call 1-800-772-1213 for a replacement card. ▶ ☐ | | |

| | | | |
|---|---|---|---|
| **5** | Total number of allowances you are claiming (from line **H** above **or** from the applicable worksheet on page 2) | **5** | 2 |
| **6** | Additional amount, if any, you want withheld from each paycheck . . . . . . . . . . . . . . . . | **6** | $ |
| **7** | I claim exemption from withholding for 2014, and I certify that I meet **both** of the following conditions for exemption. | | |
| | • Last year I had a right to a refund of **all** federal income tax withheld because I had **no** tax liability, **and** | | |
| | • This year I expect a refund of **all** federal income tax withheld because I expect to have **no** tax liability. | | |
| | If you meet both conditions, write "Exempt" here . . . . . . . . . . . . . . . . ▶ | **7** | |

Under penalties of perjury, I declare that I have examined this certificate and, to the best of my knowledge and belief, it is true, correct, and complete.

**Employee's signature**
(This form is not valid unless you sign it.) ▶ christa tacker    **Date** ▶ 11/2/14, 03:57:09 AM, Gre

| **8** Employer's name and address (Employer: Complete 8 and 10 only if sending to the IRS.) | **9** Office code (optional) | **10** Employer identification number (EIN) |
|---|---|---|

**For Privacy Act and Paperwork Reduction Act Notice, see page 2.**    Cat. No. 10220Q    Form **W-4** (2014)

Form W-4 (2014)

Page **2**

## Deductions and Adjustments Worksheet

**Note.** Use this worksheet *only* if you plan to itemize deductions or claim certain credits or adjustments to income.

1   Enter an estimate of your 2014 itemized deductions. These include qualifying home mortgage interest, charitable contributions, state and local taxes, medical expenses in excess of 10% (7.5% if either you or your spouse was born before January 2, 1950) of your income, and miscellaneous deductions. For 2014, you may have to reduce your itemized deductions if your income is over $305,050 and you are married filing jointly or are a qualifying widow(er); $279,650 if you are head of household; $254,200 if you are single and not head of household or a qualifying widow(er); or $152,525 if you are married filing separately. See Pub. 505 for details . . . . **1**  $_____

2   Enter: { $12,400 if married filing jointly or qualifying widow(er)
          $9,100 if head of household
          $6,200 if single or married filing separately }  . . . . . . . . . **2**  $_____

3   **Subtract** line 2 from line 1. If zero or less, enter "-0-"  . . . . . . . . . . . . **3**  $_____

4   Enter an estimate of your 2014 adjustments to income and any additional standard deduction (see Pub. 505)  **4**  $_____

5   **Add** lines 3 and 4 and enter the total. (Include any amount for credits from the *Converting Credits to Withholding Allowances for 2014 Form W-4* worksheet in Pub. 505.) . . . . . . . . . . **5**  $_____

6   Enter an estimate of your 2014 nonwage income (such as dividends or interest) . . . . . . . **6**  $_____

7   **Subtract** line 6 from line 5. If zero or less, enter "-0-"  . . . . . . . . . . . . **7**  $_____

8   **Divide** the amount on line 7 by $3,950 and enter the result here. Drop any fraction . . . . . . **8**  _____

9   Enter the number from the **Personal Allowances Worksheet,** line H, page 1 . . . . . . . **9**  _____

10  **Add** lines 8 and 9 and enter the total here. If you plan to use the **Two-Earners/Multiple Jobs Worksheet,** also enter this total on line 1 below. Otherwise, **stop here** and enter this total on Form W-4, line 5, page 1   **10**  _____

## Two-Earners/Multiple Jobs Worksheet (See *Two earners or multiple jobs* on page 1.)

**Note.** Use this worksheet *only* if the instructions under line H on page 1 direct you here.

1   Enter the number from line H, page 1 (or from line 10 above if you used the **Deductions and Adjustments Worksheet**)  **1**  _____

2   Find the number in **Table 1** below that applies to the **LOWEST** paying job and enter it here. **However,** if you are married filing jointly and wages from the highest paying job are $65,000 or less, do not enter more than "3" . . . . . . . . . . . . . . . . . . . . . . . . . **2**  _____

3   If line 1 is **more than or equal to** line 2, subtract line 2 from line 1. Enter the result here (if zero, enter "-0-") and on Form W-4, line 5, page 1. **Do not** use the rest of this worksheet . . . . . . . **3**  _____

**Note.** If line 1 is **less than** line 2, enter "-0-" on Form W-4, line 5, page 1. Complete lines 4 through 9 below to figure the additional withholding amount necessary to avoid a year-end tax bill.

4   Enter the number from line 2 of this worksheet . . . . . . . . . **4**  _____

5   Enter the number from line 1 of this worksheet . . . . . . . . . **5**  _____

6   **Subtract** line 5 from line 4 . . . . . . . . . . . . . . . . . . . . **6**  _____

7   Find the amount in **Table 2** below that applies to the **HIGHEST** paying job and enter it here . . . **7**  $_____

8   **Multiply** line 7 by line 6 and enter the result here. This is the additional annual withholding needed . . **8**  $_____

9   Divide line 8 by the number of pay periods remaining in 2014. For example, divide by 25 if you are paid every two weeks and you complete this form on a date in January when there are 25 pay periods remaining in 2014. Enter the result here and on Form W-4, line 6, page 1. This is the additional amount to be withheld from each paycheck  **9**  $_____

| Table 1 | | | | Table 2 | | | |
|---|---|---|---|---|---|---|---|
| **Married Filing Jointly** | | **All Others** | | **Married Filing Jointly** | | **All Others** | |
| If wages from **LOWEST** paying job are— | Enter on line 2 above | If wages from **LOWEST** paying job are— | Enter on line 2 above | If wages from **HIGHEST** paying job are— | Enter on line 7 above | If wages from **HIGHEST** paying job are— | Enter on line 7 above |
| $0 - $6,000 | 0 | $0 - $6,000 | 0 | $0 - $74,000 | $590 | $0 - $37,000 | $590 |
| 6,001 - 13,000 | 1 | 6,001 - 16,000 | 1 | 74,001 - 130,000 | 990 | 37,001 - 80,000 | 990 |
| 13,001 - 24,000 | 2 | 16,001 - 25,000 | 2 | 130,001 - 200,000 | 1,110 | 80,001 - 175,000 | 1,110 |
| 24,001 - 26,000 | 3 | 25,001 - 34,000 | 3 | 200,001 - 355,000 | 1,300 | 175,001 - 385,000 | 1,300 |
| 26,001 - 33,000 | 4 | 34,001 - 43,000 | 4 | 355,001 - 400,000 | 1,380 | 385,001 and over | 1,560 |
| 33,001 - 43,000 | 5 | 43,001 - 70,000 | 5 | 400,001 and over | 1,560 | | |
| 43,001 - 49,000 | 6 | 70,001 - 85,000 | 6 | | | | |
| 49,001 - 60,000 | 7 | 85,001 - 110,000 | 7 | | | | |
| 60,001 - 75,000 | 8 | 110,001 - 125,000 | 8 | | | | |
| 75,001 - 80,000 | 9 | 125,001 - 140,000 | 9 | | | | |
| 80,001 - 100,000 | 10 | 140,000 and over | 10 | | | | |
| 100,001 - 115,000 | 11 | | | | | | |
| 115,001 - 130,000 | 12 | | | | | | |
| 130,001 - 140,000 | 13 | | | | | | |
| 140,001 - 150,000 | 14 | | | | | | |
| 150,001 and over | 15 | | | | | | |

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to carry out the Internal Revenue laws of the United States. Internal Revenue Code sections 3402(f)(2) and 6109 and their regulations require you to provide this information; your employer uses it to determine your federal income tax withholding. Failure to provide a properly completed form will result in your being treated as a single person who claims no withholding allowances; providing fraudulent information may subject you to penalties. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation; to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their tax laws; and to the Department of Health and Human Services for use in the National Directory of New Hires. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by Code section 6103.

The average time and expenses required to complete and file this form will vary depending on individual circumstances. For estimated averages, see the instructions for your income tax return.

If you have suggestions for making this form simpler, we would be happy to hear from you. See the instructions for your income tax return.

## ENROLLMENT / WAIVER FORM
### January 1, 2008 – December 31, 2008

**Rehab♥Care™**

### EMPLOYEE DATA (Please Print)

| Last Name, First, M.I. | SS# | Hire Date: 9·2·08 |
|---|---|---|
| TACKER Christa LeAnne | | Effective Date: 11·1·08 |

| ☐ Address change — Street Address (Home): 301 N. Beverly | City, State, Zip (Home): Sherwood Ar 72120 |
|---|---|

| Phone# (Home) 501 8394771 | Phone# (Alternate) 501 8384771 | Date of Birth (mm/dd/yyyy) 5·31·72 | ☐ Male  ☒ Female | Marital Status: ☒ Single  ☐ Married  ☐ Divorced  ☐ Widowed |
|---|---|---|---|---|

### THIS SECTION MUST BE COMPLETED REGARDLESS OF HEALTH PLAN ENROLLMENT OR WAIVER. BENEFICIARY INFORMATION FOR EMPLOYEE BASIC LIFE AND AD&D, PL COVERAGE AND VOLUNTARY LIFE COVERAGE (AND FLEX, IF ENROLLED)

**NOTE** If Co-Beneficiary, indicate percentage for each where indicated. The following beneficiary designation supersedes any designation previously stated as of the date signed below.

☐ Primary Beneficiary or ☒ 1st Co-Beneficiary
Name: Austin H. Floyd    Social Security #: _____    Relationship: Son
Percentage if applicable: 70%    Address: 301 N. Beverly Sherwood Ar 78120

☐ Contingent or ☒ 2nd Co-Beneficiary
Name: Chelsea Elaine Tacker    Social Security #: _____    Relationship: Neice
Percentage if applicable: 30%    Address: 1001 Wynne Wood Dr. Castalian Spring TN 37031

Employee is automatically the beneficiary for voluntary dependent life coverage.

### MEDICAL, RX – Eligible: Full-Time Employees
#### Enrollment/Waiver (please check one Option only)

☒ I Request Medical Plan Coverage:    ☐ I Decline Medical Plan Coverage  Initial: _____  Date: _____

| | | | |
|---|---|---|---|
| Option I | ☐ Employee Only | ☐ Employee + Spouse/ Domestic Partner | ☐ Employee + Child(ren) | ☐ Employee + Family |
| Option II | ☐ Employee Only | ☐ Employee + Spouse/ Domestic Partner | ☒ Employee + Child(ren) | ☐ Employee + Family |
| Option III | ☐ Employee Only | ☐ Employee + Spouse/ Domestic Partner | ☐ Employee + Child(ren) | ☐ Employee + Family |

### PREMIUM VISION – Eligible: Full-Time Employees
#### Enrollment/Waiver (please check one)

☐ I Request Premium Vision Coverage:    ☒ I Decline Premium Vision Coverage:  Initial: ___  Date: 10/09/08

| Premium Vision Plan | ☐ Employee Only | ☐ Employee + Spouse/ Domestic Partner | ☐ Employee + Child(ren) | ☐ Employee + Family |
|---|---|---|---|---|

### DENTAL – Eligible: Full-Time Employees
#### Enrollment/Waiver (please check one)

☒ I Request Dental Coverage:    ☐ I Decline Dental Coverage:  Initial: _____  Date: _____

| Dental Plan | ☐ Employee Only | ☐ Employee + Spouse/ Domestic Partner | ☒ Employee + Child(ren) | Employee + Family |
|---|---|---|---|---|

### ENROLLMENT INFORMATION (Complete if Enrolling in Medical, Dental or Voluntary Life and/or AD&D)

| First Name | Last Name | Social Security Number | Date of Birth | Gender | **Student Status |
|---|---|---|---|---|---|
| Employee: Christa LeAnne Tacker | | | | ☐ M ☒ F | |
| Spouse/Domestic Partner* (circle one) | | | | ☐ M ☐ F | |
| Child: Austin Hunter Floyd | | | | ☒ M ☐ F | ☐ Yes ☐ No |
| Child | | | | ☐ M ☐ F | ☐ Yes ☐ No |
| Child | | | | ☐ M ☐ F | ☐ Yes ☐ No |

*Please submit the Domestic Partner Declaration found at www.rehabcare.com/benefits.
**Please submit evidence of eligibility for dependent children over age 18.

Page 2 of 4 received on 10/9/2008 1:02:35 PM [Central Daylight Time] from CSID

## VOLUNTARY SHORT-TERM DISABILITY (Contributions Are Pre-Tax)
### Eligible: Full-Time Employees

☐ I Request Voluntary Short-Term Disability Coverage:    ☑ I Decline Voluntary Short-Term Disability Coverage: Initial: ___    Date: 10/09/08

I understand that in the event I request to purchase such insurance at a later date: (1) I will be required to furnish evidence of insurability for myself at my own expense, and (2) Aetna, Inc. will have the right to deny my request.

Employees who live in states that provide State Disability Plans may have benefits reduced by amount paid by the state.

Note: Disability benefits when paid, will be considered taxable income.

## VOLUNTARY LONG-TERM DISABILITY (Contributions Are Pre-Tax)
### Eligible: Full-Time Employees

☑ I Request Voluntary Long-Term Disability Coverage:    ☐ 50% coverage    ☑ 66⅔ coverage

☐ I Decline Voluntary Long-Term Disability Coverage: Initial: ___    Date: ___

I understand that in the event I request to purchase such insurance at a later date: (1) I will be required to furnish evidence of insurability for myself at my own expense, and (2) Aetna, Inc. will have the right to deny my request.

Note: Disability benefits when paid, will be considered taxable income.

## VOLUNTARY LIFE (Contributions Are After Tax)
### Eligible: Full-Time Employees

☐ I Request Voluntary Life Coverage:    ☑ I Decline Voluntary Life Coverage: Initial: ___    Date: 10/09/08

Amount of Life Coverage Selected For:
You: $___    Your Spouse: $___    Each Child: $___
☐ Smoker ☐ Non-Smoker    ☐ Smoker ☐ Non Smoker    Spouse's Date of Birth ___

## VOLUNTARY AD&PL (Contributions Are Pre-Tax)
### Eligible: Full-Time Employees

☐ I Request Voluntary AD&PL Coverage:    ☑ I Decline Voluntary AD&PL Coverage: Initial: ___    Date: 10/09/08

Amount of AD&PL Coverage Selected For:
You: $___    Your Spouse: $___    Each Child: $___

## FLEXIBLE SPENDING ACCOUNTS – FSAs (Contributions Are Pre-Tax)

Medical: ($5,000 annual max.) Eligible: Full-Time Employees
☐ I Request Medical FSA: Annual contribution: $___    ☑ Decline Medical FSA:    Initial: ___    Date: 10/09/08

Dependent Care: ($5,000 annual max. $2,500 annual max. if tax filing status is Married Filing Separately) Eligible: Full-Time & Part-Time Employees
☐ I Request Dependent Care FSA: Annual contribution: $___    ☑ Decline Dependent Care FSA: Initial: ___    Date: 10/09/08

## 401(k) Plan Information Request
### Eligible: Full-Time, Part-Time and PRN Employees

A complete description of our 401(k) Savings Plan is contained in the Summary Plan Description available on www.rehabcare.com/benefits

## ACKNOWLEDGEMENT AND SIGNATURE

I certify that all of the information on this form is true and complete to the best of my knowledge and belief. I understand that my elections may not be changed during the plan year unless I have a qualifying life status change. I hereby authorize RehabCare Group to reduce my pay by the amount required to pay for the choices I have made, if any, for this and future plan years. I understand that my coverage is subject to all the terms of the plan of insurance contained in the group policy and summarized in the materials provided to me. I understand that the company retains the right to amend, modify or terminate the benefit plans at any time. I also understand that I am responsible for notifying RehabCare Group of any change in my status within 30 days of the change. Failure to do so may disqualify me from receiving coverage.

Date 10/08/08    Signature ___

Please return the completed enrollment form to:
RehabCare Group
Attention: HR Assistance Center/ FAX to 866-812-2834
7733 Forsyth Boulevard
Suite 2300
St. Louis, MO 63105

# Self-Identification Information Form

Qualified applicants are considered for employment and employees are treated during employment, without regard to race, color, religion, sex, national origin, age, marital status, medical condition, or disability.

Please complete this information to assist us in complying with equal opportunity/affirmative action record keeping and reporting requirements. Providing this information is voluntary, refusal to provide the information will not result in any adverse treatment. This information is voluntary, refusal to provide the information will not result in any adverse treatment. This information form will be kept in a separate, confidential file and will be used only for safety and government reporting purposes.

Applicant/Employee PRINTED Name: _Christa LeAnne Tacker_

Please choose only one Race/Ethnic Group:

- [ ] American Indian/Alaska Native
- [ ] Asian
- [ ] Black or African American
- [ ] Hispanic or Latino
- [ ] Native Hawaiian or other Pacific Islander
- [x] White (not of Hispanic origin)
- [ ] Two or more races

Sex:   [ ] Male   [x] Female

_Christa LeAnne Tacker_   8/05/08
Applicant/Employee Signature   Date

Rev. 6/2008

11/3/10 *mee*
*lang*

## SEPARATION AGREEMENT

This Separation Agreement ("Agreement") is made by and between Christa Tacker ("Employee") and RehabCare Group, Inc. ("REHABCARE"), a Missouri corporation having a principal place of business located at 7733 Forsyth Boulevard, St. Louis, Missouri 63105.

WHEREAS, EMPLOYEE is employed with REHABCARE as an Occupational Therapist, and

WHEREAS, the parties desire to conclude the employment relationship;

NOW, THEREFORE, in consideration of the mutual covenants and promises herein contained and other good and valuable consideration, receipt of which is hereby acknowledged, it is hereby agreed by and between the parties as follows:

1. EMPLOYEE'S position with REHABCARE will be eliminated effective October 8, 2010. REHABCARE agrees to pay EMPLOYEE two (2) weeks pay, as severance pay, less applicable taxes and withholding, for which REHABCARE will issue an IRS Form W-2. EMPLOYEE acknowledges and agrees that such payment is in lieu of any and all other wages, commissions, compensation, bonuses, equity awards, or any other remuneration, award or entitlement of any nature whatsoever.

   EMPLOYEE will be provided notice of EMPLOYEE'S rights under COBRA. EMPLOYEE may elect to continue certain group healthcare benefits to the extent provided for under COBRA. EMPLOYEE shall not be entitled to participate in any qualified or non-qualified employee benefit plan, welfare plan, fringe benefit, or perquisites, of any type or manner, from and after the effective date of EMPLOYEE'S termination.

2. EMPLOYEE hereby represents that EMPLOYEE has not filed any charge or claim against REHABCARE, or any of its current or former directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with any court or agency. EMPLOYEE furthermore affirms that EMPLOYEE has no known workplace injuries and has been provided and/or has not been denied any leave requested under the Family and Medial Leave Act ("FMLA"). EMPLOYEE has not been retaliated against for reporting any allegations of wrongdoing by REHABCARE, or their officers, including any allegations of corporate fraud.

3. EMPLOYEE, on behalf of EMPLOYEE and EMPLOYEE heirs, executors, administrators, and assigns, agrees never to directly or indirectly commence or prosecute, or to assist in the commencement or prosecution, or in any way cause, or advise to be commenced or prosecuted, any action or proceeding against REHABCARE or any of its current or former directors, officers, insurers, managers, agents, employees, subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, with respect to any matter, whether or not now known, based upon any act, transaction, practice, conduct or omission that occurred prior to the date of this Agreement except as required by law or legal process. The institution of any such action shall be considered a material breach of this Agreement. In the event that EMPLOYEE has instituted any actions or proceedings against REHABCARE, EMPLOYEE agrees promptly to take all necessary steps to withdraw those actions or proceedings with prejudice.

4.  EMPLOYEE agrees, promises, and covenants that during EMPLOYEE employment with REHABCARE, EMPLOYEE did not violate any federal, state or local law, statute or regulation while acting within the scope of his/her employment with REHABCARE, nor did EMPLOYEE violate REHABCARE's Code of Conduct while employed with REHABCARE. EMPLOYEE further represents that EMPLOYEE has no actual knowledge of, any reason to believe, that the REHABCARE or any of its subsidiaries, affiliates, employees, agents, or representatives, has violated any federal, state, or local law, regulation, rule, or ordinance. EMPLOYEE represents that EMPLOYEE is thoroughly familiar with REHABCARE'S policies and procedure, including those pertaining to compliance and internal disclosure; that EMPLOYEE has no actual knowledge of, or any reason to believe, that any event has occurred that is in violation of such policies or procedures, or that requires internal disclosure consistent with such policies and procedures; and that EMPLOYEE has no actual knowledge of, or any reason to believe, that any other employee, agent, or representative of REHABCARE has violated, or has knowledge of a violation, of such policies or procedures.

5.  EMPLOYEE hereby agrees on behalf of EMPLOYEE, and EMPLOYEE'S agents, representatives, assignees, attorneys, heirs, executors, administrators, successors and assigns, to forever release and forever discharge REHABCARE, including any and all of its current and former directors, officers, managers, agents, employees subsidiaries, affiliates or related business entities, their respective successors or assigns, or any of their directors, officers, managers, agents, employees, subsidiaries, affiliates or related business entities, any individual now or formerly employed by REHABCARE whether acting as agents for REHABCARE or in their individual capacities, and their respective heirs, executors, administrators, successors and assigns, of and from all manner of actions, proceedings, causes of action, suits, debts, sums of money, accounts, contracts, controversies, agreements, promises, damages, judgments, claims, liabilities, terms, sanctions and demands, of whatsoever character, nature or kind, actual or potential, known or unknown, suspected or unsuspected, whether arising in law or in equity out of any federal, state or city constitution, statute, ordinance, by-law or regulation (including but not limited to any and all claims for discrimination under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Older Worker Benefits Protection Act, the Family and Medical Leave Act, the Consolidated Omnibus Budget Reconciliation Act, the Americans With Disabilities Act, the Employee Retirement Income Security Act, the Equal Pay Act, the Missouri Human Rights Act, California employment discrimination law and statutes (to the extent applicable), and all claims for breach of contract, breach of fiduciary duty and wrongful discharge and any and all claims relating to EMPLOYEE'S employment at REHABCARE, all claims that were or could have been raised in any other agency charge, all claims under any other statute, state or federal, and all claims for attorneys' fees, costs, disbursements or the like), all claims to any benefits under any Stock Option Plan which EMPLOYEE may have or have executed with REHABCARE or any claims under any agreement or otherwise with REHABCARE which EMPLOYEE ever had, now has, or which he/she or her heirs, executors, administrators, successors, and/or assigns can, or may have for, or by reason of, any matter, cause, event or thing whatsoever, from the beginning of the world to the date of this Release.

This Agreement shall not apply to either rights or claims, or both, that may arise after the effective date of this Agreement.  It also shall have no effect on EMPLOYEE'S vested rights in either any welfare or benefit plan, or both, including but not limited to any pension benefits or retiree medical benefits, or both.

It is understood and agreed that this is a full and final release covering all known and unknown, undisclosed and unanticipated losses, wrongs, injuries, debts, claims or damages to EMPLOYEE which may have arisen, or may arise from any act or omission prior to the date of

execution of this Agreement arising out of or related, directly or indirectly, to EMPLOYEE'S employment, termination of employment, or lack of employment or independent contractor relationship, with REHABCARE, or with any other business entity released herein, as well as those alleged losses, injuries, debts, claims or damages now known or unknown which have arisen, or may arise as a result of any act or omission which occurred prior to signing this Agreement as described above. To the extent applicable, EMPLOYEE and REHABCARE expressly waive any and all rights and benefits conferred upon them by the provisions of Section 1542 of the California Civil Code or by the statutes or common law of any jurisdiction which have the same effect as the provisions of section 1542 which reads:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

EMPLOYEE and REHABCARE assume all risks attendant to release of claims previously or hereafter arising which are unknown, unforeseen or latent. EMPLOYEE and REHABCARE understand and acknowledge the significance and consequences of such a specific waiver of the protections of Section 1542.

6. EMPLOYEE has returned, or will promptly return upon request, all property, assets, equipment, or other property belonging to REHABCARE including any and all keys, computers, telephones, office machines and equipment, books, supplies, and any other thing owned by REHABCARE and used by EMPLOYEE during EMPLOYEE'S employment.

7. EMPLOYEE shall not publicize or disclose the terms, contents, conditions or existence of this Agreement, whether in writing or orally, to any person, other than EMPLOYEE'S accountant, tax preparer, financial consultant or spouse.

8. EMPLOYEE agrees that EMPLOYEE will not at any time (i) publicly disparage or encourage or induce others to publicly disparage REHABCARE, and/or (ii) engage in any conduct that is in any way injurious to REHABCARE's reputation and interests (including, without limitation, any negative or derogatory statements or writings).

9. EMPLOYEE acknowledges that, in and as a result of EMPLOYEE employment with REHABCARE, EMPLOYEE has made use of, acquired, and/or added to the confidential information of a special and unique nature and value relating to such matters as REHABCARE's trade secrets, systems, procedures, manuals, and list of clients and customers. EMPLOYEE acknowledges that all records, materials, and information acquired or developed by EMPLOYEE in the course of EMPLOYEE'S employment are confidential, trade secrets and/or shall remain the exclusive property of REHABCARE. EMPLOYEE covenants and agrees that EMPLOYEE shall not, at any time directly or indirectly, divulge or disclose, REHABCARE's confidential information or trade secrets for any purpose obtained by or disclosed to EMPLOYEE by REHABCARE to any person other than REHABCARE. In the event of a breach or threatened breach by EMPLOYEE of any of the provisions of this paragraphs, REHABCARE, in addition to and not in limitation of any other rights, remedies or damages available to REHABCARE at law or in equity, shall be entitled to a permanent injunction in order to prevent or restrain any such breach by EMPLOYEE, or by EMPLOYEE's partners, agents, representatives, servants,

employers, employees, and/or any and all persons directly or indirectly acting for or with EMPLOYEE.

10. EMPLOYEE agrees to cooperate with REHABCARE and its legal counsel, and to furnish any and all complete and truthful information, testimony or affidavits, in connection with any matter or project that arose during EMPLOYEE employment with REHABCARE, or in connection with any litigation, governmental proceeding or investigation, arbitration or claim, that in any way relates to the business or operations of REHABCARE or of which EMPLOYEE may have any knowledge or involvement.   EMPLOYEE will consult with and provide information to REHABCARE and its legal counsel concerning all such matters, and appear as and when requested to provide any such information, assistance or testimony on reasonable notice. REHABCARE will use its best efforts to have such cooperation performed at reasonable times and places and in a manner as not to unreasonably interfere with any other employment in which EMPLOYEE may then be engaged.  Nothing in this Agreement will be construed or interpreted as requiring EMPLOYEE to provide any testimony, sworn statement or declaration that is not complete and truthful.  If REHABCARE requires EMPLOYEE to travel outside the metropolitan area in the United States where EMPLOYEE then resides to provide any testimony or otherwise provide any such assistance, REHABCARE agrees to reimburse EMPLOYEE for any reasonable, ordinary and necessary travel and lodging expenses incurred by him/her to do so provided he/she submits all documentation required under REHABCARE's reimbursement policies and as otherwise may be required to satisfy any requirements under applicable tax laws for REHABCARE to deduct those expenses.  Nothing in this Agreement will prevent EMPLOYEE from giving truthful testimony or information to law enforcement entities, administrative agencies or courts or in any other legal proceedings as required by law, including, but not limited to, assisting in an investigation or proceeding brought by any governmental or regulatory body or official related to alleged violations of any law relating to fraud or any rule or regulation of the Securities and Exchange Commission or any other governmental agency.  If a regulatory agency or self regulatory agency contacts EMPLOYEE regarding REHABCARE or if EMPLOYEE receives a subpoena or other court or legal process relating in any way to REHABCARE or EMPLOYEE employment with REHABCARE, EMPLOYEE agrees to provide REHABCARE immediate notice of such subpoena or other court or legal process, and EMPLOYEE will cooperate with REHABCARE.

11. The parties herein agree that this Agreement will be governed by the laws of the State of Missouri, without reference to choice of law principles, and that EMPLOYEE will exclusively submit only to the jurisdiction of the Missouri Circuit Court, Twenty-first Judicial Circuit (St. Louis County) or the United States District Court for the Eastern District of Missouri, if jurisdiction exists, for the resolution of any disputes that may arise hereunder.

12. EMPLOYEE shall abide by the continuing terms and conditions of [his/her] employment regarding his/her continuing obligation to maintain REHABCARE's confidential and privileged information.

13. The parties hereto agree that this Agreement may not be modified, altered or changed except by a written agreement signed by the parties hereto.  The parties acknowledge that this constitutes the entire agreement between them, superseding all prior written or oral agreements.  If any provision of this Separation Agreement is held to be invalid, the remaining provisions shall nevertheless remain in full force and effect.

14. EMPLOYEE understands and agrees that EMPLOYEE:

A.  Has had the opportunity to consider this Agreement for a full twenty-one (21) days before executing it. This twenty-one( 21) days will begin on October 8, 2010, 2010.

B.  Has carefully read and fully understands all of the provisions of this Agreement.

C.  Is, through this Agreement, releasing REHABCARE and its officers, agents, directors, supervisors, employees and representatives, and their successors and assigns and all persons acting by, through, under or in concert with any of them from any and all claims he/she may have against them.

D.  Knowingly and voluntarily agrees to all of the terms set forth in this Agreement.

E.  Knowingly and voluntarily intends to be legally bound by the same.

F.  Was advised and hereby is advised in writing to consider the terms of this Agreement and consult with EMPLOYEE'S legal counsel, or another attorney of EMPLOYEE'S choice prior to executing this Agreement.

G.  Has a full seven (7) days following the execution of this Agreement to revoke this Agreement and has been hereby advised in writing that this Agreement shall not become effective or enforceable until the revocation period has expired.

H.  Understand that rights or claims under the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621 *et seq.*) that may arise after the date of this Agreement is executed and are not waived.

15. EMPLOYEE acknowledges that he/she has read this Agreement in its entirety, that EMPLOYEE has had all of its provisions explained to her by counsel, who has answered any and all questions that he/she has asked with regard to the meaning of any of the provisions thereof, and that he/she consents to all the terms and conditions contained herein.

16. This Agreement may be executed in counterparts.

WHEREFORE, the parties hereto have caused this Agreement to be signed as of the day and date first above written.

**PLEASE READ CAREFULLY. BY YOUR SIGNATURE, YOU AGREE TO THE TERMS SET FORTH ABOVE.**

DATED: 10/12/10

Signature: *LeAnne Tucker OTR/L*
Printed Name: *LeAnne Tucker*
EMPLOYEE

REHABCARE GROUP, INC.

DATED: 11/2/2010

By: _____
Cory Nicoletti, Manager, Human Resources

3227749                                Page 5

**Rehab❤Care**

# STATUS CHANGE FORM

Using the "Tab" key to move between fields, indicate changes as applicable. E-mail the completed form to **HRData** or fax to **866-812-2834** along with any required documentation as soon as the effective date of the change is known.

☒ Contract Therapy  ☐ Corporate  ☐ Inpatient ARU  ☐ Outpatient  ☐ Phase 2 Consulting
☐ Polaris  ☐ Rehab Hospital/LTACH  ☐ VitalCare  ☐ VTA

Effective Date of Status Change (*required*):  **9/1/2008**

Employee Name **Christa LeAnne Tacker** Employee #

☐ **Name Change** to  (*attach copy of new social security card*)

☒ **Transfer** from Facility/Dept. **42358**  to Facility/Dept. **41491**

☐ **Title Change** from  to
  ☐ Check here if title change is a promotion.

☐ **Rate Change**  ☐ Annual (*attach Performance Evaluation*) ☐ Promotion ☐ Adjustment
  ☐ Demotion ☒ Job Reclassification ☐ Other  (To be entered into HRMS wherever possible)

| Current Rate | % Change (+ or -) | Amt. Change (+ or -) | = | Total New Rate |
|---|---|---|---|---|
| **$50** | | **($3.50)** | | **$46.50** |

☐ **Pay Code Change** (*mark new pay code*) ☐ Salaried  ☐ Hourly

☒ **Classification Change**  FROM: **On Call**  TO: **Full Time (32-39 hrs/wk)**

☐ **Leave of Absence** ☐ Maternity ☐ Medical ☐ Military ☐ Military Spouse ☐ Personal

____/____/____ Last day actively at work  ____/____/____ Anticipated return date

☐ **Return from Leave** (*complete upon return*)  ____/____/____ Actual date of return

☐ **New Address/Phone #**

☐ **Termination:**
  Company Property Returned  ☐ Yes ☐ No  Repayment Owed: ☐ No ☐ Yes (specify  )
  **Rehire Eligibility:** ☐ Eligible for rehire  ☐ Eligible with some reservation  ☐ Not eligible for rehire

  **Mark a termination reason:** ☐ Credentials ☐ Elimination of Position ☐ Gross Misconduct
  ☐ Job Abandonment ☐ Failure to Return from Leave ☐ Misstatement on Application
  ☐ Resignation-Other Position ☐ Personal Reasons ☐ Staff Reduction ☐ Relocation ☐ Quit in Lieu of Discharge
  ☐ Return to School ☐ Transfer to Affiliate ☐ End Temporary Employment ☐ Unsatisfactory Performance
  ☐ Unit Closing ☐ Unavailable for work ☐ Retirement ☐ Death ☐ Other/Involuntary ☐ Other/Voluntary

Comments:

Employee's Manager: Shellee Essary  Date **8/15/2008**

Approved by:  Date ____/____/____

REV 7/1/2008

9/16/08MD

Order Candidate  Page 1 of 1

## PLACEMENT RECORD

### Placement Documents

*Add Document*
Send Placement Email



◄ **Team Information** ►

### Recruiter Information

|  |  |
|---|---|
| Recruiter: | Cynthia Row |
| Recruiter Assistant: | Terri Sifford |
| AVP: | Andrea Lampert |

◄ **Applicant** ►

| | |
|---|---|
| Name: | Christa L. Tacker |
| Address: | 301 North Beverly |
| City, State Zip: | Sherwood , AR 72120 |
| Email: | newyorkmiddle@yahoo.com |
| Home: | 501-838-4771 |
| Alternate: | 501-563-4771 |
| Employee Type: | Hourly |
| Employee Class: | On Call |
| Military Status: | Not Indicated |
| Marital Status: | |
| Division: | Contract Therapy |
| Ethnicity : | Unspecified |
| Gender : | Female |
| BirthDate : | 05/31/1972 |
| Social Security Number : | 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 |
| Job Code: | Occupational Therapist |

◄ **New Hire Information** ►

| | |
|---|---|
| Job Order: | Occupational Therapist |
| Company: | Trinity Village |
| Unit #: | 42358 |
| Address: | 6400 Trinity Drive |
| City, State Zip: | Pine Bluff , AR 71603 |
| Fax: | |
| Placement Date: | 08/01/2008 |
| Starting Date: | 08/04/2008 |
| Comp Frequency: | Hourly |
| Starting Salary: | $50.00 per. hour  ,  $104,000.00 per. year |
| Sign On Bonus: | 0.00   0 month |
| Relocation Bonus: | 0.00   0 month |
| Retention Bonus: | 0.00   0 month |
| Workers Comp Code: | 8829 - Nursing Home Professional |
| Special Instructions: | |

Application for Employment                                                        Page 1 of 7

**From:** WhiteHall [whitehall@inciterehab.com]
**Sent:** Monday, August 04, 2008 7:38 AM
**To:** Cynthia Row
**Subject:** Application_06%202007-word%20fillable[1]

**Attachments:** image001.jpg

# Application for Employment

| RehabCare Group, Inc. is an Equal Opportunity Employer. Those applicants requiring reasonable accommodation for the ap and/or interview process should notify a representative of the Human Resources Department. |||||
|---|---|---|---|---|
| **Demographic Information** |||||
| Date 08/02/2008 | Position Applied For OT.... PRN || Desired Salary Range 50 | Desired Classification  Ful Part Time    On Call |
| Name (as it appears on social security card) |||| Social Security Number |
| First    Christa | Middle  LeAnne || Last Tacker | |
| Address<br><br>Street    301 North Beverly Zip Code 72120 ||| City     Sherwood | State     Ark |
| Primary Telephone  501-838-4771 || Alternate Telephone 501-563-4771 || Email newyorkmiddle@yahoo.com |
| **Referral Source** |||||
| Friend Michelle Durham | School || Telephone Call | RehabCare Website |
| Employee __ | Job Fair/Conference || Internet | Other (specify) |
| Advertisement | Staffing Agency || Mailer | Student Affiliation |

| | NO | YI |
|---|---|---|
| Will you travel if job requires it?          Percentage of time available to travel __ | NO | YI |
| Will you work overtime if required? | NO | YI |
| Are you legally eligible to be employed in the United States? | NO | YI |
| Are you over the age of 18 years? | NO | YI |

| **Answering "yes" to the following question does not constitute an automatic bar to employment.** ||| 
|---|---|---|
| THIS QUESTION FOR Calif. applicants only: Have you ever been convicted of a crime? (Please exclude misdemeanor convictions for marijuana-related offenses more than two years old; convictions that have been sealed, expunged, or legally eradicated; and misdemeanor convictions for which probation was successfully completed or otherwise discharged and the case was judicially dismissed.) If Yes, briefly describe the nature of the crime(s), the date and place of conviction(s), and the legal disposition of the case(s): | NO | YE |
| THIS QUESTION FOR Non-Calif. applicants only: Have you ever been convicted with or without trial of, pleaded guilty or no contest to, or otherwise been found to have committed a felony or misdemeanor other than a traffic violation?  If "yes", please explain: | NO | YE |
| Have you ever been excluded from participation in a federal healthcare program (e.g. Medicare/Medicaid)?  If "Yes", please explain: | NO | YI |
| Has any license/certification held by you ever been subject to disciplinary action, suspension, or revocation?  If "yes", please explain: | NO | YI |
| Have you ever worked for this company before? If "yes", when? | NO | YI |
| Driver's license number required if driving is required in the job for which you are applying.  State: Ark  Number:905( ||

| **References** |||||
|---|---|---|---|---|
| List name and telephone number of three business/work references, not related to you.  If not applicable, list three school or references, not related to you. |||||
| Name | Title || Relationship | Telephone Number and/or E-mail address | Number Known |

## Application for Employment

Page 2 of 7

| | | | | |
|---|---|---|---|---|
| Michelle Durham | PTA | Co-worker | 501-733-0402 | 9 |
| Laura Enmon | RTA | Co-worker | 501-7447135 | 10 |
| | | | | |

## Employment History

Starting with your most recent employer, provide the following information

| Employer | Telephone # | Dates Employed | Month/Year |
|---|---|---|---|
| Incite | 501-932-0055 | Month/Year | 11/01 / 2007    to |
| | | 08/03 /2008 | |

| Street Address | City | State | Starting Compensation $38.75     per |
|---|---|---|---|
| 824 Salem Road    Conway, AR 72034 | | | Hourly   Salary |
| | | | Commission/Bonus/Other Compensation $ |

| Starting job title | Final Job Title | Final Compensation $38.75     per |
|---|---|---|
| OTR | OTR | Hourly  Salary |

| Immediate supervisor and title (for most recent position held) Gale Stack COTA | May we contact for reference? Yes  No  Later | Commission/Bonus/Other Compensation $ |
|---|---|---|

Why did you leave?
not left place of employment yet

Summarize the type of work performed and job responsibilities.
OTR

| Employer | Telephone # | Dates Employed | Month/Year |
|---|---|---|---|
| ONR | 501-940-1144 | Month/Year | 01/08 / 2003    to |
| | | 11/01 /2007 | |

| Street Address | City | State | Starting Compensation $28     per |
|---|---|---|---|
| | | | Hourly   Salary |
| | | | Commission/Bonus/Other Compensation $ |

| Starting job title | Final Job Title | Final Compensation $38     per |
|---|---|---|
| OTR | OTR | Hourly  Salary |

| Immediate supervisor and title (for most recent position held) Barbara Sowell | May we contact for reference? Yes  No  Later | Commission/Bonus/Other Compensation $ |
|---|---|---|

Why did you leave?
loss of contracts within the area homes

Summarize the type of work performed and job responsibilities.
OTR

| Employer | Telephone # | Dates Employed | Month/Year |
|---|---|---|---|
| TMS | | Month/Year | 05/05 / 2000    to |
| | | 01/08 /2003 | |

| Street Address | City | State | Starting Compensation $24     per |
|---|---|---|---|
| | | | Hourly   Salary |
| | | | Commission/Bonus/Other Compensation $ |

| Starting job title | Final Job Title | Final Compensation $     per |
|---|---|---|
| | | Hourly  Salary |

| Immediate supervisor and title (for most recent | May we contact for | Commission/Bonus/Other Compensation |
|---|---|---|

Application for Employment

| position held) | reference? | $ | | |
|---|---|---|---|---|
| | Yes No Later | | | |

Why did you leave?

Company went bankrupt.... and loss of cotracts within the area homes

Summarize the type of work performed and job responsibilities.

OTR

## Employment History (Continued)

Explain any gaps in your employment, other than those due to personal illness, injury or disability:
NO  GAPS NOTED IN EMPLOYMENT HISTORY

| | NO | YES |
|---|---|---|
| If not addressed on previous page, have you ever been fired or asked to resign from a job?<br>If "Yes", please explain: | | |

## Skills and Qualifications

Summarize any special training, skills, licenses and/or certificates that may assist you in performing the position for which you are applying:
OTR

Describe any professional designations you hold or any professional organizations in which you participate:
OTR

### Computer Skills

| MS Office    Other (specify) | Software Titles Used | Years Experience |
|---|---|---|
| Internet Skills (Specify)<br>basic | | Years Experience |
| Other Computer Skills (Specify)<br>basic | | Years Experience |

## Educational Background

Starting with your most recent school attended, provide the following information.

| School (include city and state) | Number of Years Completed | Degree | GPA – Class Rank | Major/Minor |
|---|---|---|---|---|
| UCA | 6 | OTR/L | 3.5 | |
| | | | | |
| | | | | |

**The Application for Employment and separate Background Verification Disclosure
MUST be filled out completely and signed for your application to be considered**

Application for Employment                                                    Page 5 of 7

| Practice Eligibility | | | |
|---|---|---|---|
| Eligible to practice as a(n) | | | |
| State | ARKANSAS | Temporary | Permanent |
| License/Certification # | 1688 | Expires (MM/DD/YY) | 05/31/2009 |
| Additional practice eligibility as a(n) N/A | | | |
| State | | Temporary | Permanent |
| License/Certification # | | Expires (MM/DD/YY) | |

Please provide additional license/certification information on a separate sheet of paper.

For identification purposes please provide month and day of birth only. Do not include year <u>05/31</u>

Have you used any names or social security numbers other than those listed previously? YES   NO

Please list Other Name (s) Used:                    Please list other Social Security Number (s) Used:

_____                    _____

_____                    _____

### APPLICANT STATEMENT

I certify that the facts contained in this application are true, accurate and complete. I understand that, if I am hired, any false or misleading statements or omissions on this application may result in my dismissal. I authorize investigation of all statements contained herein and authorize the references listed to give you any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing same to you. I acknowledge that any offer of employment is contingent on the satisfactory completion of such investigation.

I understand and agree that, if hired, my employment is for no definite period and can be terminated at any time with or without cause by either RehabCare Group, Inc. or myself. No one is authorized to make any contrary agreement or representation without approval of the President of RehabCare Group, Inc. In the event that I am hired, I understand that regardless of the job that I am first assigned, I may be required to accept a change of position or location depending on my demonstrated skills after employment, and the needs of the RehabCare Group, Inc. I understand that initially and during the course of employment, I may be required to undergo and successfully complete a post-offer physical examination, which may include drug and alcohol screening, and I specifically consent to any such screening. I understand, also, that if hired I am required to abide by all rules and regulations of RehabCare Group, Inc.

**DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE APPLICANT STATEMENT.**

_____

Applicant/Employee Signature                                      Date

_____

Applicant/Employee PRINTED Name

8/5/2008

The Application for Employment and separate Background Verification Disclosure
MUST be filled out completely and signed for your application to be considered

## Practice Eligibility

| Eligible to practice as a(n) | | | |
|---|---|---|---|
| State | Arkansas | ☐ Temporary | ☒ Permanent |
| License/Certification # | 1488   OTR | Expires (MM/DD/YY) | 5/31/2009 |

| Additional practice eligibility as a(n) | | | |
|---|---|---|---|
| State | | ☐ Temporary | ☐ Permanent |
| License/Certification # | | Expires (MM/DD/YY) | |

Please provide additional license/certification information on a separate sheet of paper.

For identification purposes please provide month and day of birth only. Do not include year _____

Have you used any names or social security numbers other than those listed previously? ☐YES   ☐NO

Please list Other Name (s) Used:                    Please list other Social Security Number (s) Used:

_____              _____

_____              _____

### APPLICANT STATEMENT

I certify that the facts contained in this application are true, accurate and complete. I understand that, if I am hired, any false or misleading statements or omissions on this application may result in my dismissal. I authorize investigation of all statements contained herein and authorize the references listed to give you any and all information concerning my previous employment and any pertinent information they may have, personal or otherwise, and release all parties from all liability for any damage that may result from furnishing same to you. I acknowledge that any offer of employment is contingent on the satisfactory completion of such investigation.

I understand and agree that, if hired, my employment is for no definite period and can be terminated at any time with or without cause by either RehabCare Group, Inc. or myself. No one is authorized to make any contrary agreement or representation without approval of the President of RehabCare Group, Inc. In the event that I am hired, I understand that regardless of the job that I am first assigned, I may be required to accept a change of position or location depending on my demonstrated skills after employment, and the needs of the RehabCare Group, Inc. I understand that initially and during the course of employment, I may be required to undergo and successfully complete a post-offer physical examination, which may include drug and alcohol screening, and I specifically consent to any such screening. I understand, also, that if hired I am required to abide by all rules and regulations of RehabCare Group, Inc.

**DO NOT SIGN UNTIL YOU HAVE READ THE ABOVE APPLICANT STATEMENT.**

☞  _Christa Rehmme Jacky  OKIL_                        8/05/08
Applicant/Employee Signature                             Date

_____
Applicant/Employee PRINTED Name

Rev. 6/2008

 

## BACKGROUND VERIFICATION DISCLOSURE

As part of the employment process, RehabCare Group, Inc. will obtain an investigative consumer report. The investigative consumer report may include information regarding your character, general reputation, personal characteristics or mode of living. The following Consumer Reporting Agency will prepare the report:

Kroll (formerly InfoLink)
9201 Oakdale Avenue, Suite 100,
Chatsworth, CA 91311

I authorize RehabCare Group Inc.'s Background Check Vendor, Kroll to produce a consumer report (known as an investigative consumer report in California) either during the application process or at any time during my employment with RehabCare Group, Inc. This consumer report will be procured pursuant to the Fair Credit Reporting Act. The consumer report / investigative consumer report may include information regarding my character, general reputation, personal characteristics, or mode of living. This report may be compiled with information from courts record repositories, departments of motor vehicles, past or present employers and educational institutions, governmental occupational licensing or registration entities, business or personal references, and any other source required to verify information that I have voluntarily supplied. Job specific responsibilities may require a credit report. If a credit report is necessary, an additional disclosure will be required for my signature. I understand that upon written request within a reasonable period of time, I am entitled to additional information concerning the nature and scope of this investigation. I also understand that pursuant to the Fair Credit Reporting Act, I have the right to know if adverse action is being considered against me as a result of the information contained in the report, I have the right to a copy of the report prior to any adverse action being taken against me, and I have the right to dispute the accuracy of any information in the report by contacting the consumer reporting agency conducting the investigation. A copy of the Summary of Rights Under the Fair Credit Reporting Act is available at www.ftc.gov.

I release RehabCare Group, Inc. and any person or entity (including any current or former employer, person, firm, corporation, school or government agency, its officers, employees and agents) which provides information pursuant to this authorization, from any and all liabilities, claims, or lawsuits in regards to the information obtained from any and all of the above referenced sources used. I understand that the Company will adhere to the Fair Credit Reporting Act and any applicable laws concerning the securing, handling and release of such information.

You may contact Kroll during normal business hours to obtain information about your consumer report or investigative consumer reports as follows:

1. In person at Kroll office at the address listed above. You will need to furnish proper identification prior to receiving your file. You may have someone accompany you and should inform such person that they will also have to present reasonable identification. If you want Kroll to disclose to or discuss your information with this third party, you may be required to provide a written statement granting Kroll permission to do so.
2. By certified mail, if you make a written request (and provide proper identification) to have your file sent to a specified addressee.
3. By telephone, if you have previously made a written request and provided proper identification.

Kroll has trained personnel to explain any information that is furnished to you and to explain any information that is coded.

**Minnesota, California & Oklahoma applicants please note:**

In connection with your application for employment, your consumer report may be obtained and reviewed. Under your state laws, you have a right to receive a free copy of your consumer report by checking the appropriate box below.

☐ YES, I am a Minnesota applicant and would like a free copy of my consumer report.
☐ YES, I am an Oklahoma applicant and would like a free copy of my consumer report.
☐ YES, I am a California applicant and would like a free copy of my investigative consumer report.

I certify that I have read, and fully understand and accept all terms of the foregoing BACKGROUND VERIFICATION DISCLOSURE and authorize procurement of the report described above. I certify that all the statements I have made and all the information I have provided to RehabCare Group, Inc. are true, including the information on this form, and agree that any false information, misrepresentation or omission of facts may result in cancellation of my application and/or immediate dismissal.

_____     8 | 05 | 08
Applicant/Employee Signature                          Date

_____
Applicant/Employee PRINTED Name

Rev. 6/2008

Page 5 of 5 received on 8/5/2008 4:47:16 PM [Central Daylight Time] from CSID

**Arkansas State Medical Board**
**2100 Riverfront Drive**
**Little Rock, AR 72202**

Registration Year: 2008                    Active/Unlimited

No.: OTR1688        Issued: 11/6/2001        Expires: 5/31/2009

Christa LeAnne Tacker, OT
301 North Beverly
Sherwood, AR 72120

## CERTIFICATE OF HEALTH-TUBERCULOSIS

In accordance with the requirements of Sec. 194 Act 169 of 1931, as amended ACA 6-17-101 and the Regulations of the Arkansas State Board of Health.

_Christa Tacker_ (Name)



of _Pulaski_ County

has undergone screening for tuberculosis.

Employment ☒    Student ☐

☐ Schools
☐ Day Care Centers- Day Facilities
☒ Nursing Homes/Hospitals

☐ University/Colleges(Complete Reverse Side)
☐ Correctional Facility
☐ ADC (Complete reverse Side)

PPD ___0___ mm _5/13/08_ (Date)    PPD ___0___ mm _5/29/07_ (Date)

Date Issued _5/15/08_    Expires in 1 year ☒    No return ☐

Signature of Authorized MD, RN, LPN _Roushan Husain RN_

Candidate Questionnaire

**CANDIDATE QUESTIONNAIRE**

 

Candidate Name: **Christa Tacker**
Questionnaire: **Reference Form**

Edit                                              ▲**Reference Form** ▲                    ID
                                                                                            **54**
**Question & Answer**                                                              Created
                                                                                **Aug 07, 2008**
Reference Name:                                                                       by TJS

**Michelle Durham**                                                              Updated

What is your relationship with (candidate name)?                                        by

**Colleague**

How long have you known the candidate and where did you work together?

**8 yrs: facility in Little Rock (nursing home)**

What was the candidate's position & responsibilities?

**OT - OT treatment on patients, director of rehab w/ONR for a short time**

(Only applies if candidate is a clinician) Describe his/her clinical skills and competencies, including documentation.

**clinical skills are very good, documentation is excellent - detailed and shows progress**

On a scale of 1 to 5, how would you rate the candidate's overall work performance?

**5-Excellent**

How did the candidate get along with his/her peers and supervisors?

**very pleasant to work with, team player**

On a scale of 1 to 3, how would you rate the candidate's attendance and punctuality?

**3-Excellent**

Briefly describe the candidate's strengths.

**patients are first priority, gives her patients direct one on one attention**

What are the candidate's growth areas or areas of improvement?

**n/a**

Would you rehire the candidate?

**Yes**

Candidate Questionnaire                                      Page 1 of 1

## CANDIDATE QUESTIONNAIRE



Candidate Name: **Christa Tacker**
Questionnaire: **Reference Form -2**

Edit                                     **Reference Form -2**        ID
                                                                             **55**

**Question & Answer**                                                       Created
                                                                           **Aug 08, 2008**
Reference Name                                                                 by TJS

**Laura Enmon**

What is your relationship with (candidate name)?                             Updated

**Colleague**                                                                  by

How long have you known the candidate and where did you work together?

**8 yrs: long term care**

What was the candidate's position and responsibilities?

**Had been rehab director, was also an OT**

(Only applies if candidate is a clinician.) Describe his/her clinical skills and competencies,
including documentation.

**very thorough, very caring, good w/the patients, documentaion always exceedeed
standards**

On a scale of 1 to 5, how would your rate the candidate's overall work performance?

**5-Excellent**

How did the candidate get along with his/her peers and supervisors?

**always very helpful and supportive, team player and could get along w/any group**

On a scale of 1 to 3, how would you rate the candidate's attendance and punctuality?

**3-Excellent**

Briefly describe the candidate's strengths.

**very caring, knowledgeable, very dedicated**

What are the candidate's growth areas or areas of improvement?

**n/a**

Would you rehire the candidate?

**Yes**

**IT Acceptable Use Policy**

# REHABCARE GROUP, INC.
# STANDARD OPERATING PROCEDURES MANUAL

### 1.0    Overview

IT's intentions for publishing an Acceptable Use Policy are not to impose restrictions that are contrary to RehabCare's established culture of openness, trust and integrity. IT is committed to protecting RehabCare's employees, partners and the company from illegal or damaging actions by individuals, either knowingly or unknowingly.

Internet/Intranet/Extranet-related systems, including but not limited to computer equipment, software, operating systems, storage media, network accounts providing electronic mail, WWW browsing, and FTP, are the property of RehabCare. These systems are to be used for business purposes in serving the interests of the company, and of our clients and customers in the course of normal operations. Please review Human Resources policies for further details.

Effective security is a team effort involving the participation and support of every RehabCare employee and affiliate who deals with information and/or information systems. It is the responsibility of every computer user to know these guidelines, and to conduct their activities accordingly.

### 2.0    PURPOSE

The purpose of this policy is to outline the acceptable use of computer equipment at RehabCare. These rules are in place to protect the employee and RehabCare. Inappropriate use exposes RehabCare to risks including virus attacks, compromise of network systems and services, and legal issues.

### 3.0    SCOPE

This policy applies to employees, contractors, consultants, temporaries, and other workers at RehabCare, including all personnel affiliated with third parties. This policy applies to all equipment that is owned or leased by RehabCare.

### 4.0    POLICY

### 4.1    GENERAL USE AND OWNERSHIP

1.  While RehabCare's network administration desires to provide a reasonable level of privacy, users should be aware that the data they create on the corporate systems remains the property of RehabCare. Because of the need to protect RehabCare's network, management cannot guarantee the confidentiality of information stored on any network device belonging to RehabCare.

2.  Employees are responsible for exercising good judgment regarding the reasonableness of personal use. Individual departments are responsible for creating guidelines concerning personal use of Internet/Intranet/Extranet systems. In the absence of such policies, employees should be guided by departmental policies on personal use, and if there is any uncertainty, employees should consult their supervisor or manager.

3.  IT recommends that any information that users consider sensitive or vulnerable be encrypted or password protected.

4.  For security and network maintenance purposes, authorized individuals within RehabCare may monitor equipment, systems and network traffic at any time.

5.  RehabCare reserves the right to audit networks and systems on a periodic basis to ensure compliance with this policy.

6.  As an employee of RehabCare Group, Inc., you may be assigned an electronic device in order to fulfill your responsibilities as required by your position. The following policy shall apply to the employee's accountability for this equipment. RehabCare will assume responsibility for the first loss of the electronic device. The employee will be responsible for each subsequent loss after the first replacement has been incurred by RehabCare Group Inc. In the event of such loss, RehabCare will deduct the replacement value from the employee's paycheck(s) over a period not to exceed six months.

7.  The Information Technology department cannot be held responsible for any data not stored on the managed network at the RehabCare corporate office. It is the user's responsibility to backup any data that cannot be stored on the RehabCare corporate network.

8.  The purchase or repair of any electronic hardware, software or any related services must be approved by the IT department.

### 4.2    SECURITY AND PROPRIETARY INFORMATION

1.  The user interface for information contained on Internet/Intranet/Extranet-related systems should be classified as either confidential or not confidential, as defined by corporate confidentiality guidelines, details of which can be found in Human Resources policies. Examples of confidential information include but are not limited to: company private, corporate strategies, competitor sensitive, trade secrets, specifications, customer lists, employee data, partner information, and research data. Employees should take all necessary steps to prevent unauthorized access to this information.

2.  Keep passwords secure and do not share accounts. Authorized users are responsible for the security of their passwords and accounts. Passwords should be changed quarterly

3.  All PCs, laptops and workstations should be secured with a password-protected screensaver with the automatic activation feature set at 15 minutes or less, or by logging-off (control-alt-delete for Windows XP users) when the host will be unattended.

4.  Because information contained on portable computers and other electronic devices are especially vulnerable, special care should be exercised to ensure physical security.

5.  Postings by employees from a RehabCare email address to newsgroups should contain a disclaimer stating that the opinions expressed are strictly their own and not necessarily those of RehabCare, unless posting is in the course of business duties.

6.  All hosts used by the employee that are connected to the RehabCare Internet/Intranet/Extranet, whether owned by the employee or RehabCare, shall be continually executing approved virus-scanning software with a current virus database.

7.  Employees must use extreme caution when opening e-mail attachments received from unknown senders, which may contain viruses, malicious code.

## 4.3    UNACCEPTABLE USE

The following activities are, in general, prohibited. Employees may be exempted from these restrictions during the course of their legitimate job responsibilities (e.g., systems administration staff may have a need to disable the network access of a host if that host is disrupting production services).

Under no circumstances is an employee of RehabCare authorized to engage in any activity that is illegal under local, state, federal or international law while utilizing RehabCare-owned resources.

The lists below are by no means exhaustive, but attempt to provide a framework for activities which fall into the category of unacceptable use.

SYSTEM AND NETWORK ACTIVITIES

1.  Violations of the rights of any person or company protected by copyright, trade secret, patent or other intellectual property, or similar laws or regulations, including, but not limited to, the installation or distribution of "pirated" or other software products that are not appropriately licensed for use by RehabCare or the host facility. Verification of the legality and interoperability must take place prior to the software being installed.

2.  Unauthorized copying of copyrighted material including, but not limited to, digitization and distribution of photographs from magazines, books or other copyrighted sources, copyrighted music, and the installation of any copyrighted software for which RehabCare does not have an active license is strictly prohibited.

3.  Exporting software, technical information, encryption software or technology, in violation of international or regional export control laws, is illegal. The appropriate management should be consulted prior to export of any material that is in question

4.  Introduction of malicious programs into the network or server.

5.  Revealing your account password to others or allowing use of your account by others.

6.  Using a RehabCare computing asset to actively engage in procuring or transmitting material that is in violation of sexual harassment or hostile workplace laws in the user's local jurisdiction.

7.  Making fraudulent offers of products, items, or services originating from any RehabCare account.

8.  Making statements about warranty, expressly or implied, unless it is a part of normal job duties.

9.  Effecting security breaches or disruptions of network communication. Security breaches include, but are not limited to, accessing data of which the employee is not an intended recipient or logging into a server or account that the employee is not expressly authorized to access, unless these duties are within the scope of regular duties. For purposes of this section, "disruption" includes, but is not limited to, network sniffing, pinged floods, packet spoofing, denial of service, and forged routing information for malicious purposes.

10.  Port scanning or security scanning is expressly prohibited unless prior notification to IT is made.

11.  Executing any form of network monitoring which will intercept data not intended for the employee's host, unless this activity is a part of the employee's normal job/duty.

12.  Circumventing user authentication or security of any host, network or account.

13.  Interfering with or denying service to any user other than the employee's host (for example, denial of service attack).

14.  Using any program/script/command, or sending messages of any kind, with the intent to interfere with, or disable, a user's terminal session, via any means, locally or via the Internet/Intranet/Extranet.

15.  Providing information about, or lists of, RehabCare employees to parties outside RehabCare.

EMAIL AND COMMUNICATIONS ACTIVITIES

1. Sending unsolicited email messages, including the sending of "junk mail" or other advertising material to individuals who did not specifically request such material (email spam).

2. Any form of harassment via email, telephone or paging, whether through language, frequency, or size of messages.

3. Unauthorized use, or forging, of email header information.

4. Solicitation of email for any other email address, other than that of the poster's account, with the intent to harass or to collect replies.

5. Creating or forwarding "chain letters" or other "pyramid" schemes of any type.

6. Use of unsolicited email originating from within RehabCare's networks of other Internet/Intranet/Extranet service providers on behalf of, or to advertise, any service hosted by RehabCare or connected via RehabCare's network.

7. Posting the same or similar non-business-related messages to large numbers of Usenet newsgroups (newsgroup spam).

## 5.0    ENFORCEMENT

Any employee found to have violated this policy may be subject to disciplinary action, up to and including termination of employment.

**By initialing the box below, I certify that I have reviewed the above information, and I agree to the conditions of hiring.**

**Your Initials:** _CT_ _____          **Date:**    _8/14/2008_

# Background Verification Disclosure

As part of the employment process, RehabCare Group, Inc. will obtain an investigative consumer report. The investigative consumer report may include information regarding your character, general reputation, personal characteristics or mode of living. The following Consumer Reporting Agency will prepare the report:

InfoLink Screening Services, Inc. (InfoLink)<br>
9201 Oakdale Avenue, Suite 100,<br>
Chatsworth, CA 91311

I authorize RehabCare Group Inc.'s Background Check Vendor, InfoLink to produce a consumer report (known as an investigative consumer report in California) either during the application process or at any time during my employment with RehabCare Group, Inc. This consumer report will be procured pursuant to the Fair Credit Reporting Act. The consumer report / investigative consumer report may include information regarding my character, general reputation, personal characteristics, or mode of living. This report may be compiled with information from courts record repositories, departments of motor vehicles, past or present employers and educational institutions, governmental occupational licensing or registration entities, business or personal references, and any other source required to verify information that I have voluntarily supplied. Job specific responsibilities may require a credit report. If a credit report is necessary, an additional disclosure will be required for my signature. I understand that upon written request within a reasonable period of time, I am entitled to additional information concerning the nature and scope of this investigation. I also understand that pursuant to the Fair Credit Reporting Act, I have the right to know if adverse action is being considered against me as a result of the information contained in the report, I have the right to a copy of the report prior to any adverse action being taken against me, and I have the right to dispute the accuracy of any information in the report by contacting the consumer reporting agency conducting the investigation. A copy of the Summary of Rights Under the Fair Credit Reporting Act is available at www.ftc.gov.

I release RehabCare Group, Inc. and any person or entity (including any current or former employer, person, firm, corporation, school or government agency, its officers, employees and agents) which provides information pursuant to this authorization, from any and all liabilities, claims, or lawsuits in regards to the information obtained from any and all of the above referenced sources used. I understand that the Company will adhere to the Fair Credit Reporting Act and any applicable laws concerning the securing, handling and release of such information.

You may contact InfoLink during normal business hours to obtain information about your consumer report or investigative consumer reports as follows:

1. In person at InfoLink office at the address listed above. You will need to furnish proper identification prior to receiving your file. You may have someone accompany you and should inform such person that they will also have to present reasonable identification. If you want InfoLink to disclose to or discuss your information with this third party, you may be required to provide a written statement granting InfoLink permission to do so.
2. By certified mail, if you make a written request (and provide proper identification) to have your file sent to a specified addressee.
3. By telephone, if you have previously made a written request and provided proper identification.

InfoLink has trained personnel to explain any information that is furnished to you and to explain any information that is coded.

Minnesota, California & Oklahoma applicants please note: In connection with your application for employment, your consumer report may be obtained and reviewed. Under your state laws, you have a right to receive a free copy of your consumer report by checking the appropriate box below.

1. ☐   YES, I am a Minnesota applicant and would like a free copy of my consumer report.

2. ☐   YES, I am an Oklahoma applicant and would like a free copy of my consumer report.

3. ☐   YES, I am a California applicant and would like a free copy of my investigative consumer report.

**By initialing in the box below I certify that I have read, and fully understand and accept all terms of the foregoing BACKGROUND VERIFICATION DISCLOSURE and authorize procurement of the report described above. I certify that all the statements I have made and all the information I have provided to RehabCare Group, Inc. are true, including the information on this form, and agree that any false information, misrepresentation or omission of facts may result in cancellation of my application and/or immediate dismissal.**

**Your Initials:**  CT                                          **Date:**     8/14/2008

# Emergency Contact Information

| | |
|---|---|
| **Name** | austin floyd |
| **Relationship** | Child |
| **Primary Contact?** | Yes |
| **Telephone** | (501) 563-4445 |
| **Alternate Phone** | |

# Confidentiality Statement

During the course of performing duties as an employee of RehabCare Group, Inc., I will be given access to, or otherwise come to know certain information about the Company and its operations and business strategies that must be kept confidential.

Because of the significant harm that could accrue by virtue of an unauthorized disclosure of such information, I should assume that any information obtained by virtue of my position with the Company is property of the Company that should be used solely for the benefit of the Company.

During the course of my employment with the Company and thereafter until the information becomes public through means other than my own actions, I may not use any such information for my own pecuniary benefit nor may I transfer or convey such information to any third party whether by verbal, written, or electronic (such as internet chat rooms) methods.

Violation of this policy could result in termination of my employment and/or legal action by the Company to protect the information against misuse. In addition, misuse of material non-public information in connection with the purchase or sale of the company's securities by me or a person to whom I conveyed such information, could result in a civil enforcement action by the United States Securities and Exchange Commission for violation of its rules against trading on "inside information".

**By checking the box below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

**Your Initials:** CT _____          **Date:** ___8/14/2008___

# Policy and Procedure Acknowledgement

I understand that the Colleague Handbook is a summary statement of the current general employment of RehabCare Group, Inc. and supersedes previous handbooks.

Since the information, policies and benefits described in it are necessarily subject to change, I acknowledge that revisions to the handbook may occur. I recognize the Company may modify, revoke, suspend, terminate or change any or all of its policies in whole or in part, at any time, with or without notice to me. However I understand that the Company will attempt to inform me without being bound to do so, of any changes or additions to its policies, as soon as practicable, by publishing and distributing changes to this handbook. The statements made in the handbook are made to assist the Company in its operations and its employee relations, and the Company reserves the right to interpret the handbook contents.

I acknowledge that the handbook is neither a contract of employment nor a legal document. I have received the handbook, and I understand that it is my responsibility to read and comply with the policies contained in the handbook and any revisions made to it.

**By checking the box below I certify that the above information is true and correct, and I agree to the conditions of hiring.**

Your Initials: *CT*                                                                                     Date:    8/14/2008

# Personal Information

Personal Information: Please review and complete or correct as necessary. Required fields are indicated by **bold** type.

| | |
|---|---|
| **Social Security Number** | ███████ |
| **First Name** | Christa |
| **Middle Initial** | L |
| **Last Name** | Tacker |
| **Street Address** | 301 North Beverly |
| **Apt** | |
| **City** | Sherwood |
| **State** | AR |
| **Zip code** | 72120 |
| **Years There** | 8 |
| **Telephone** | (501) 838-4771 |
| **Alternate Phone** | (501) 563-4445 |
| **Email Address** | newyorkmiddle@yahoo.com |
| **Date of Birth** | 5/31/1972 |
| **Marital Status** | Single |

# Self-Identification Information Form

Qualified applicants are considered for employment and employees are treated during employment, without regard to race, color, religion, sex, national origin, age, marital status, medical condition, or disability. Please complete this information to assist us in complying with equal opportunity/affirmative action record keeping and reporting requirements. Providing this information is voluntary, refusal to provide the information will not result in any adverse treatment. This information form will be kept in a separate, confidential file and will be used only for safety and government reporting purposes.

☐ **Check this box if you choose not to voluntarily self disclose.**

| Sex | Female |
|---|---|
| **Please choose only one. Race/Ethnic Group** | White |

| Check if Any of the Following Are Applicable |
|---|
| ☐ Vietnam Veteran |
| ☐ Disabled Veteran |
| ☐ Disabled Individual |

## HRS/SRS STATUS CHANGE FORM – Email *(preferred)*



Using the "Tab" key to move between fields, indicate changes as applicable.

E-mail the completed form to **HRData** along with any required documentation as soon as the effective date of the change is known. **Only IF** SMART facility access is indicated below, the IT Help Desk must be copied on the email as well.

| |
|---|
| Division: ☒Skilled-Nursing Rehab Services (SRS)  ☐ Polaris  ☐VTA ☐PORT<br>☐Hospital Rehab Services (HRS) Inpatient ☐Hospital Rehab Services (HRS) Outpatient ☐VitalCare |
| Effective Date of Status Change *(required)*:          **8/16/10** |
| Employee Name *(required)*: **Christa Tracker**       Employee # **077092** |
| Name Change to          *(attach copy of new social security card)* |
| Transfer to: Facility/Dept. |
| Title Change to:<br>        ☐ Check here if title change is a promotion. |
| Rate Changes are not processed on this form (entered into HRMS by HRS PD or SRS DO and up) |
| Pay Code Change *(mark new pay code)* ☐Salaried        ☒Hourly |
| Classification Change to: **Click Here for Classifications**<br><br>        Mark a reason if change to On Call: **Click Here for reasons** |
| Leave of Absence: ☐Maternity ☐Medical ☐Military  ☐Military/Exigency ☐Military/Caregiver<br>        ☐Personal/Caregiver           ☐Personal/Other<br>        /  /   Last day actively at work      /  /   Anticipated return date |
| Return from Leave *(complete upon return)*      /  /   Actual date of return |
| New Address/Phone # |
| Termination:     Termination reason *(required)*: **Click Here for Term Reasons**<br>          Rehire Eligibility *(required)*: **Click Here for Rehire Eligibility**<br>Company Property Returned? ☐Yes ☐No    Repayment Owed? ☐Yes (add comments below ) ☐No |
| Comments: |
| SMART system access needed for additional facility numbers( i.e. OP100, SRS105)<br>*(if SMART system access is needed for any facilities other than the home facility, the IT Help Desk must be copied)*<br>Employee's Manager: **Linda Cannon, DO**     Date **8/23/10** |
| Change Submitted by: **Linda Cannon**    Title: **DO**     Date **8/23/10** |

REV 3/1/2010



# STATUS CHANGE FORM

Using the "Tab" key to move between fields, indicate changes as applicable.  E-mail the completed form to **HRData** or fax to **866-812-2834** along with any required documentation as soon as the effective date of the change is known.

☒ Contract Therapy ☐ Corporate ☐ Inpatient ARU ☐ Outpatient ☐ Phase 2 Consulting
☐ Polaris ☐ Rehab Hospital/LTACH ☐ VitalCare ☐ VTA

Effective Date of Status Change (*required*): **12/01/2008**

Employee Name **Christa LeAnne Tacker** Employee # **077092**

☐ **Name Change** to          (*attach copy of new social security card*)

☐ **Transfer** from Facility/Dept.          to Facility/Dept.

☐ **Title Change** from          to
   ☐ Check here if title change is a promotion.

☐ **Rate Change**    ☐ Annual (*attach Performance Evaluation*) ☐ Promotion ☐ Adjustment
   ☐ Demotion ☒ Job Reclassification ☐ Other  (To be entered into HRMS wherever possible)

| Current Rate | % Change (+ or -) | Amt. Change (+ or -) | = | Total New Rate |
|---|---|---|---|---|
|  |  |  |  |  |
|  |  |  |  |  |

☒ **Pay Code Change** (*mark new pay code*) ☒ Salaried ☐ Hourly  ✓

☒ **Classification Change**    **FROM:** Full Time (32-39 hrs/wk)    **TO:** Full Time (40 hrs/wk)

☐ **Leave of Absence** ☐ Maternity ☐ Medical ☐ Military ☐ Military Spouse ☐ Personal

_____ / _____ Last day actively at work    _____ / _____ Anticipated return date

☐ **Return from Leave** (*complete upon return*)    _____ / _____ Actual date of return

☐ **New Address/Phone #**

☐ **Termination:**
   Company Property Returned  ☐ Yes ☐ No   Repayment Owed: ☐ No ☐ Yes (specify        )
   Rehire Eligibility:  ☐ Eligible for rehire   ☐ Eligible with some reservation   ☐ Not eligible for rehire
   **Mark a termination reason:** ☐ Credentials ☐ Elimination of Position ☐ Gross Misconduct
   ☐ Job Abandonment ☐ Failure to Return from Leave ☐ Misstatement on Application
   ☐ Resignation-Other Position ☐ Personal Reasons ☐ Staff Reduction ☐ Relocation ☐ Quit in Lieu of Discharge
   ☐ Return to School ☐ Transfer to Affiliate ☐ End Temporary Employment ☐ Unsatisfactory Performance
   ☐ Unit Closing ☐ Unavailable for work ☐ Retirement ☐ Death ☐ Other/Involuntary ☐ Other/Voluntary

Comments:

Employee's Manager: Shellee Essary    Date **12/31/2008**

Approved by:          Date _____ / _____

REV 7.1.2008



# STATUS CHANGE FORM

Using the "Tab" key to move between fields, indicate changes as applicable. E-mail the completed form to **HRData** or fax to **866-812-2834** along with any required documentation as soon as the effective date of the change is known.

| | | | | |
|---|---|---|---|---|
| ☒ Contract Therapy | ☐ Corporate | ☐ Inpatient ARU | ☐ Outpatient | ☐ Phase 2 Consulting |
| ☐ Polaris | ☐ Rehab Hospital-LTACH | ☐ VitalCare | ☐ VTA | |

Effective Date of Status Change (*required*):  __12/01/2008__

Employee Name **Christa LeAnne Tacker** Employee # **077092**

☐ **Name Change to** _____ (*attach copy of new social security card*)

☐ **Transfer** from Facility/Dept. _____ to Facility/Dept. _____

☐ **Title Change** from _____ to _____
      ☐ Check here if title change is a promotion.

☐ **Rate Change** ☐ Annual (*attach Performance Evaluation*) ☐ Promotion ☐ Adjustment
      ☐ Demotion ☒ Job Reclassification ☐ Other (To be entered into HRMS wherever possible)

| Current Rate | % Change (+ or -) | Amt. Change (+ or -) | = | Total New Rate |
|---|---|---|---|---|
| | | | | |

☒ **Pay Code Change** (*mark new pay code*) ☒ Salaried ☐ Hourly

☒ **Classification Change**    FROM: **Full Time (32-39 hrs/wk)**    TO: **Full Time (40 hrs/wk)**

☐ **Leave of Absence** ☐ Maternity ☐ Medical ☐ Military ☐ Military Spouse ☐ Personal

_____/_____/_____ Last day actively at work _____/_____/_____ Anticipated return date

☐ **Return from Leave** (*complete upon return*) _____/_____/_____ Actual date of return

☐ **New Address/Phone #**

☐ **Termination:**
      Company Property Returned ☐ Yes ☐ No   Repayment Owed ☐ No ☐ Yes (specify        )
      **Rehire Eligibility:** ☐ Eligible for rehire  ☐ Eligible with some reservation  ☐ Not eligible for rehire
      **Mark a termination reason:** ☐ Credentials ☐ Elimination of Position ☐ Gross Misconduct
      ☐ Job Abandonment ☐ Failure to Return from Leave ☐ Misstatement on Application
      ☐ Resignation-Other Position ☐ Personal Reasons ☐ Staff Reduction ☐ Relocation ☐ Quit in Lieu of Discharge
      ☐ Return to School ☐ Transfer to Affiliate ☐ End Temporary Employment ☐ Unsatisfactory Performance
      ☐ Unit Closing ☐ Unavailable for work ☐ Retirement ☐ Death ☐ Other Involuntary ☐ Other/Voluntary

Comments:

Employee's Manager: Shellee Essary    Date **12/31/2008**

Approved by: _____ Date _____/_____/_____

REV 7-1-2005

JAN 05 2009    1/5/09KD



# ARKANSAS STATE MEDICAL BOARD

2100 Riverfront Drive, Little Rock, Arkansas 72202-1435 (501) 296-1802 FAX: (501) 603-3555

www.armedicalboard.org

## Detailed License Verification

Queried on: Monday, June 21, 2010 at 2:54 PM

## General Information

Name: Christa LeAnne Tacker, OT

Specialty:

## Address Information

Mailing Address: 301 North Beverly

City/State/Zip: Sherwood, AR 72120

Phone: (501) 758-3339

Fax:

RECEIVED JUN 24 2010

**License Information**

License Number: OTR1688
Original Issue Date: 11/6/2001
Expiration Date: 5/31/2011
Basis: Exam
License Status: Active
License Category: Unlimited


License Number: O-T0152
Original Issue Date: 7/19/2001
Expiration Date: 11/19/2001
Basis: Exam
License Status: Inactive
License Category: Temporary


License Number: O-T0146
Original Issue Date: 3/19/2001
Expiration Date: 7/9/2001
Basis: Exam
License Status: Inactive
License Category: Temporary

No Information Found for: License Board History

RECEIVED JUN 2 4 2010



**Arkansas State Medical Board**
**2100 Riverfront Drive**
**Little Rock, AR 72202**

Registration Year: 2008                    Active/Unlimited

No.: OTR1688        Issued: 11/6/2008        Expires: 5/31/2009

Christa LeAnne Tacker, OT
301 North Beverly
Sherwood, AR 72120

## CERTIFICATE OF HEALTH-TUBERCULOSIS

In accordance with the requirements of Sec. 194 Act 169 of 1931, as amended ACA 6-17-101 and the Regulations of the Arkansas State Board of Health.

Christa    Tacker
_____
(Name)

of    Pulaski                                    County

has undergone screening for tuberculosis.

Employment ☑    Student ☐

☐ Schools                              ☐ Universities & Colleges(Complete Reverse Side)
☐ Day Care Cnters- Day Facilities    ☐ Corrections Facility
☑ Nursing Homes/Hospitals            ☐ ADC (Complete reverse Side)
                                       ☐

PPO  0    mm  5/13/08    PPD  0    mm  5/29/07
              (Date)                        (Date)

Date Issued  5/15/08    Expires in 1 year ☒    No return ☐

Signature of Authorized MD, RN, LPN    Rowshan Hussain RN

of 2 received on 11/18/2008 10:58:36 AM [Central Standard Time] from GSD



# ARKANSAS STATE MEDICAL BOARD



2100 Riverfront Drive, Little Rock, Arkansas 72202-1435 (501) 296-1802 FAX: (501) 603-3555

www.armedicalboard.org

## Detailed License Verification

Queried on: Tuesday, May 19, 2009 at: 8:33 AM

## General Information

Name: Christa LeAnne Tacker, OT

Specialty:

## Address Information

Mailing Address: 301 North Beverly

City/State/Zip: Sherwood, AR 72120

Phone: (501) 758-3339

Fax:

RECEIVED MAY 2 1 2009

## License Information

License Number: OTR1688
Original Issue Date: 11/6/2001
Expiration Date: 5/31/2010
Basis: Exam
License Status: Active
License Category: Unlimited


License Number: O-T0152
Original Issue Date: 7/19/2001
Expiration Date: 11/19/2001
Basis: Exam
License Status: Inactive
License Category: Temporary


License Number: O-T0146
Original Issue Date: 3/19/2001
Expiration Date: 7/9/2001
Basis: Exam
License Status: Inactive
License Category: Temporary

No Information Found for: License Board History

# STATUS CHANGE FORM



Using the "Tab" key to move between fields, indicate changes as applicable. E-mail the completed form to **HRData** along with any required documentation as soon as the effective date of the change is known.

**Division**: ☐Corporate ☐Skilled-Nursing Rehab Services (SRS)  ☐ Polaris  ☐VitalCare  ☐VTA
☐ Hospital Rehab Services (HRS) Inpatient ☐Hospital Rehab Services (HRS) Outpatient

**Effective Date of Status Change (*required*):** <u>9/01/2009</u>

**Employee Name** <u>Christa L. Tacker</u>      **Employee #** <u>0077092</u>

☐ **Name Change** to       (*attach copy of new social security card*)

☒ **Transfer** from Facility/Dept. CT #2358   to Facility/Dept. CT #2111

☐ **Title Change** from       to
   ☐ Check here if title change is a promotion.

☐ **Rate Change** (entered into HRMS by HRS PD or CT DO and up)
   ☐Merit (*attach Annual Performance Eval.*) ☐Promotion ☐ Adjustment
   ☐ Job Reclassification ☐ Other  (specify)

| Current Rate | % Change (+ or -) | Amt. Change (+ or -) | = | Total New Rate |
|---|---|---|---|---|
|  |  |  |  |  |

☐ **Pay Code Change (*mark new pay code*)** ☐Salaried     ☐Hourly

☐ **Classification Change** <u>TO</u>:   **Click Here**
   **Mark a reason for change to On Call Click Here**

☐Leave of Absence  ☐ Maternity ☐Medical ☐Military  ☐Military/Exigency ☐Military/Caregiver
            ☐Personal/Caregiver       ☐Personal/Other
   ____ / ____ / ____Last day actively at work     ____ / ____ / ____Anticipated return date
☐ **Return from Leave (*complete upon return*)**     ____ / ____ / ____ Actual date of return
☐ **New Address/Phone #**

☐ **Termination:**
   Company Property Returned     ☐Yes ☐No  Repayment Owed: ☐No     ☐Yes (specify      )
   **Rehire Eligibility**:  ☐ Eligible for rehire  ☐ Eligible with some reservation  ☐ Not eligible for rehire
   **Mark a termination reason**:  Click Here for Term Reasons

Comments: This employee should be coded to 2111 Arkansas Convalescent

Employee's Manager:<u>Shellee Essary</u>Date<u>09/20/2009</u>

Approved by:_____   Date____ / ____ / ____

REV 9/1/2009